**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| 431 W. PONCE DE LEON, LLC, | : | Chapter 11 Case No. 13-53479-BEM |
| | : | |
| Debtor. | : | |
| | : | |
| IN RE: | : | |
| | : | |
| CARTEL PROPERTIES SPALDING WOODS, LLC, | : | Chapter 11 Case No. 13-53480-BEM |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |
| IN RE: | : | |
| | : | |
| 525 MORELAND AVENUE, LLC, | : | Chapter 11 Case No. 13-53481-BEM |
| | : | |
| Debtor. | : | |
| | : | |
| IN RE: | : | |
| | : | |
| CARTEL PROPERTIES II, LLC, | : | Chapter 11 Case No. 13-53482-BEM |
| | : | |
| Debtor. | : | |
| | : | |
| IN RE: | : | |
| | : | |
| ROHRIG INVESTMENTS, LP, | : | Chapter 11 Case No. 13-53483-BEM |
| | : | |
| Debtor. | : | |
| | : | |
| IN RE: | : | |
| | : | |
| ROHRIG POLLACK, LLC, | : | Chapter 11 Case No. 13-53485-BEM |
| | : | |
| Debtor. | : | |
| | : | |

**JOINT PLAN OF REORGANIZATION OF THE DEBTORS
AUGUST 19, 2013**

Ward Stone, Jr.
David L. Bury

Stone & Baxter, LLP
Suite 800, 577 Mulberry Street
Macon, Georgia 31201
Counsel to Debtor and Debtor-in-Possession

431 W. Ponce de Leon, LLC, Cartel Properties Spalding Woods, LLC, 525 Moreland Avenue, LLC, Cartel Properties II, LLC, Rohrig Investments, LP, and Rohrig Pollack, LLC (each a "Debtor" and collectively, the "Debtors") (hereinafter sometimes referred to collectively as "Rohrig", the "Debtor", or the "Company"), Debtors and Debtors-in-Possession in the above-referenced Administratively Consolidated Bankruptcy Cases, said cases having been filed on February 19, 2013, and which remain pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, hereby propose the following Joint Plan of Reorganization (the "Plan") pursuant to Section 1121(a) of Title 11 of the United States Code (the "Bankruptcy Code"):

## INTRODUCTION

### I.    Corporate Structure and Ownership

431 W. Ponce de Leon, LLC ("431 Ponce"), Cartel Properties Spalding Woods, LLC ("Spalding Woods"),  525 Moreland Avenue, LLC ("525 Moreland"), Cartel Properties II, LLC ("Cartel Properties II"), and Rohrig Pollack, LLC ("Rohrig Pollack") are each Georgia limited liability companies.  Rohrig Investments, LP ("Rohrig Investments") is a Georgia limited partnership.  Each of such Debtors is headquartered in Fulton County, Atlanta, Georgia.

George W. Rohrig ("Rohrig") directly or indirectly owns 20% or more of the outstanding voting securities of each of the Debtors.

### II.    Business Operations and Common Debt

The Debtors own, operate, manage, and, in many cases, lease certain real property and improvements located in and around Atlanta, Georgia.  Such property includes a variety of income-producing retail properties, stand-alone retail shops, and office buildings, as well as a variety of undeveloped parcels, in Fulton, DeKalb, and Gwinnett Counties, Georgia.

The Debtors are, in material and substantial part, jointly-obligated to at least one major secured lender.  Although there is some overlap of Debtors' unsecured debt, each Debtor has, for the most part, its own tenants and unsecured creditors.

## SUMMARY OF PLAN

The Plan provides for twelve (12) classes of secured claims, eight (8) classes of unsecured claims, and one (1) class of equity interests. General unsecured creditors holding allowed claims will be paid in full under the Plan.  The Plan also provides for the payment of administrative and priority claims.  The Plan is summarized as follows:

2

Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 –** The Allowed Secured Claims of **Assignees** of Governmental Units for Ad Valorem Taxes | Impaired | (Note: Unpaid Allowed Priority Claims for unpaid *ad valorem* taxes held by governmental units will be paid as unclassified claims under Section 3.1 of this Plan.)   Any Allowed Secured Claims for unpaid Pre-petition *ad valorem* taxes *assigned* to non-governmental entities, expected to total approximately $324,528 as of the Effective Date will be paid in approximately 48 monthly installments of approximately $7,510.91 each, which will be Pro-rated among Allowed Secured Claims in Class 1, provided that any balance remaining with respect to a property to be sold under this Plan will be paid in full at any closing of such sale. Holders of Allowed Secured Claims in Class 1 will retain the liens securing such Claims until such Claims are paid in full as provided under this Plan. |
| **Class 2 A – L –** The Allowed Secured Claims of **RREF BB Acquisitions, LLC.** | Impaired | The Allowed Secured Claims of RREF BB Acquisitions, LLC ("Rialto"), totaling approximately $20,771,740.96 as of the Petition Date, but anticipated to be reduced to approximately $12,920.699 by the Effective Date, of which an estimated $10,944,160 will be paid, in full, together with Plan Interest, under the thirteen sub-notes described below in this Plan, calculated upon an amortization of such Allowed Secured Claims in 360 equal monthly installments aggregating  approximately **$60,434.07** each, commencing on the Effective Date, .  Upon the sale of any property collateralizing a Class 2 |

| | | Claim provided for under this Plan, the lien of the Holder of the Allowed Secured Claim in Class 2 upon such property will be released upon payment to the Holder of such Claim the designated release prices provided in this Plan with respect to such property. The amount of the Allowed Secured Claims included in each subclass of Class 2 will be determined in accordance with 11 U.S.C. §506. Holders of Allowed Secured Claims in Class 2 shall retain all liens securing such Allowed Secured Claim until the Claims are paid in full. |
|---|---|---|
| **Class 3** - The non-recourse Allowed Secured Claim of **Bank of North Georgia** against Cartel Properties II, LLC in the approximate amount of $2,788,777.16 as of the Petition Date collateralized by a senior lien on property located at 2575 Peachtree Road, Units 19A and 19B and by property located at 268 E. Paces Ferry Road, Atlanta, Fulton County, Georgia. | Impaired | To be paid in full, together with Plan Interest, at the close of the sale of 268 E. Paces Ferry Road, Atlanta, Fulton County, Georgia. If the Allowed Secured Claim in Class 3 is paid prior to the Effective Date, such Class shall be deemed to have accepted this Plan. Holders of Allowed Secured Claims in Class 3 shall retain all liens securing such Allowed Secured Claim until the Claims are paid in full. |
| **Class 4** includes the Allowed Secured Claim of **Green Tree Servicing, LLC/America's Wholesale Lender**, against Cartel Properties II, LLC, in the approximate amount of $259,177.87 as of the Petition Date, and estimated at $253,000 as of the Effective Date, collateralized by a junior lien on property located at 2575 Peachtree Road, Units 19A and 19B, Atlanta, Fulton County, Georgia. | Impaired | To be paid in full, together with Residential Plan Interest, in 360 equal monthly installments of approximately $1,397.08 each, with the balance due on the last day of the 120th month following the Effective Date. Holders of Allowed Secured Claims in Class 4 shall retain all liens securing such Allowed Secured Claim until the Claims are paid in full. |
| **Class 5** includes the non-recourse Allowed Secured Claim of **Chase** | Impaired | To be paid in full, together with Residential Plan Interest, in equal |

| | | |
|---|---|---|
| **Mortgage**, against Cartel Properties II, LLC, in the approximate amount of $9,076.51 as of the Petition Date, and estimated at $6,500 as of the Effective Date, collateralized by property located at 3057 Pharr Court, Unit G-3, Atlanta, Fulton County, Georgia. | | monthly installments of approximately **$314.89** each, commencing on the Effective Date. Holders of Allowed Secured Claims in Class 5 shall retain all liens securing such Allowed Secured Claim until the Claims are paid in full. |
| **Class 6** includes the non-recourse Allowed Secured Claim of **CitiMortgage, Inc.**, against Cartel Properties II, LLC, in the approximate amount of $450,294.20 as of the Petition Date, and estimated at $443,119 as of the Effective Date, collateralized by property located at 10 Venetian Way, #504, Miami, Miami-Dade County, Florida. | Impaired | To be paid in full, together with Residential Plan Interest, in 360 equal monthly installments of approximately $**2,446.92** each, with the balance due on the last day of the 120th month following the Effective Date. Holders of Allowed Secured Claims in Class 6 shall retain all liens securing such Allowed Secured Claim until the Claims are paid in full. |
| **Class 7** includes the contingent, non-recourse Allowed Secured Claim of **Midtown Bank & Trust Company**, against Cartel Properties II, LLC, in the approximate amount of $3,888,296.00 as of the Petition Date collateralized by property located at 5965 Covington Highway, Decatur, Dekalb County, Georgia. | Unimpaired | To be paid per terms of existing note by the non-debtor borrower. Holders of Allowed Secured Claims in Class 7 shall retain all liens securing such Allowed Secured Claim until the Claims are paid in full. |
| **Class 8** includes the non-recourse Allowed Secured Claim of **Regions Bank**, against Cartel Properties II, LLC, in the approximate amount of $176,461 as of the Petition Date collateralized by Cartel Properties II, LLC's 50% undivided interest in property located at 433 N. McDonough Street, Decatur, Dekalb County, Georgia. | Unimpaired | To be paid per terms of existing note by primary obligor. Holders of Allowed Secured Claims in Class 8 shall retain all liens securing such Allowed Secured Claim until the Claims are paid in full. |
| **Class 9** includes the Allowed Secured | Unimpaired | To be paid per terms of existing note |

| | | |
|---|---|---|
| Claim of **Oneaveious D. Lester** against Rohrig Investments, LP, in the approximate amount of $55,223.60 as of the Petition Date, and estimated at $36,928 as of the Effective Date, collateralized by a senior lien on property located at 2271 Cascade Road, Atlanta, Fulton County, Georgia. | | in approximately 24 monthly installments of $2,025.58 each. Holders of Allowed Secured Claims in Class 9 shall retain all liens securing such Allowed Secured Claim until the Claims are paid in full. |
| **Class 10** includes the Allowed Secured Claim of **State Bank and Trust Company,** against Rohrig Investments, LP, in the approximate amount of $330,000.00 as of the Petition Date, and estimated at $330,000 as of the Effective date, collateralized by a junior lien on property located at 246 W. Ponce de Leon Ave, Atlanta, Fulton County, Georgia. | Impaired | To be paid in full, together with Plan Interest, in 360 equal monthly installments of approximately $**1,822.27** each, with the balance due on the last day of the 120th month following the Effective Date. Holders of Allowed Secured Claims in Class 10 shall retain all liens securing such Allowed Secured Claim until the Claims are paid in full. |
| **Class 11** includes the Allowed Secured Claim of **Touchmark National Bank**, against Rohrig Investments, LP, in the approximate amount of $681,856.30 as of the Petition Date, collateralized by a senior lien on property located at 2781 East College Ave. Decatur, Dekalb County, Georgia, and guaranteed by the United States Small Business Administration. | Unimpaired | To be paid in full per terms of existing note in monthly installments of $4,251.00 each, ending approximately September 19, 2036. Holders of Allowed Secured Claims in Class 11 shall retain all liens securing such Allowed Secured Claim until the Claims are paid in full. |
| **Class 12** includes the non-recourse Allowed Secured Claim of **Wells Fargo Bank, N.A.**, against Rohrig Investments, LP, in the approximate amount of $1,000,000.00 as of the Petition Date, collateralized by a senior lien on property located at 805 Peachtree Street, #620, Atlanta, Fulton | Impaired | To be paid in full, together with Residential Plan Interest, in 360 equal monthly installments of approximately $5,522.04 each, with the balance due on the last day of the 120th month following the Effective Date. Holders of Allowed Secured Claims in Class 12 shall retain all liens securing such |

| | | |
|---|---|---|
| County, Georgia. | | Allowed Secured Claim until the Claims are paid in full. |
| **Class 13** includes a Convenience Class of Claims of $3,000.00 or less. | Impaired | Convenience Class Claims, totaling approximately $18,283.70, will be paid in full on the Effective Date. |
| **Class 14** includes all Allowed Unsecured Claims against **431 W. Ponce de Leon, LLC**, except claims allowed in Class 13 or 20. | Impaired | There are no known Allowed Unsecured Claims in Class 14.  All known unsecured claims against 431 W. Ponce de Leon, LLC are included in either Class 13 or Class 20.  If it is determined the there are Allowed Unsecured Claims in Class 14, they will be paid in full, together with Plan Interest in 48 equal monthly installments commencing on the Effective Date. |
| **Class 15** contains all Allowed Unsecured Claims against **Cartel Properties Spalding Woods, LLC**, other than Claims classified in 13 or 20. | Impaired | There are no known Allowed Unsecured Claims in Class 15.  All known unsecured claims against Cartel Properties Spalding Woods, LLC are included in either Class 13 or Class 20.  If it is determined the there are Allowed Unsecured Claims in Class 15, they will be paid in the manner provided for payment of Allowed Unsecured Claims in Class 14. |
| **Class 16** includes all Allowed Unsecured Claims against **525 Moreland Avenue, LLC**, except claims allowed in Class 13 or 20. | Impaired | There are no known Allowed Unsecured Claims in Class 16.  All known unsecured claims against 525 Moreland Avenue, LLC are included in either Class 13 or Class 20.  If it is determined the there are Allowed Unsecured Claims in Class 16, they will be paid in the manner provided for payment of Allowed Unsecured Claims in Class 14. |

| | | |
|---|---|---|
| **Class 17** includes all Allowed Unsecured Claims against **Cartel Properties II, LLC**, except claims allowed in Class 13 or 20. | Impaired | There are no known Allowed Unsecured Claims in Class 17.  All known unsecured claims against Cartel Properties II, LLC are included in either Class 13 or Class 20.  If it is determined the there are Allowed Unsecured Claims in Class 17, they will be paid in the manner provided for payment of Allowed Unsecured Claims in Class 14. |
| **Class 18** includes the claims against **Rohrig Investments, LP**, of the Bank of North Georgia, Brookhaven Bank, and Georgia Primary Bank. | Impaired | Claims in Class 18, which may total as much as $2,853,608.27, include the obligations of Rohrig Investments to: (i) the Bank of North Georgia for a $1,448,369.00 line of credit owed by Rohrig Investments, LP as the primary obligor, and secured by property owned by 878 Peachtree Rd, LLC, located at 878 Peachtree Road, Condominium Unit # CU-1, Peachtree Lofts Condominium, Atlanta, Fulton County, Georgia; (ii) Brookhaven Bank in the amount of $943,278.27 for a line of credit owed by Rohrig Investments, LP as the primary obligor, and secured by property of 891 Howell Mill Road, LLC, located at 891 Howell Mill Road, Atlanta, Fulton County, Georgia; and (iii) Georgia Primary Bank in the amount of $461,961.00 for a line of credit owed by Rohrig Investments, LP as the primary obligor, and secured by property of George & Dana, LLC, located at 240 Dekalb Industrial Way, Decatur, Dekalb County, Georgia. These obligations will be paid in full per terms of existing notes by the current property owners. No provision of this Plan shall modify any lien of any Holder of an Allowed Claim in |

| | | Class 18. |
|---|---|---|
| **Class 18A** includes all Allowed Unsecured Claims against **Rohrig Investments, LP**, except claims allowed in Class 13, 18, or 20. | Impaired | There are no known Allowed Unsecured Claims in Class 18A. All known unsecured claims against Rohrig Investments, LP are included in either Class 13, 18, or Class 20. If it is determined the there are Allowed Unsecured Claims in Class 18A, they will be paid in the manner provided for payment of Allowed Unsecured Claims in Class 14. |
| **Class 19** includes all Allowed Unsecured Claims against **Rohrig Pollack, LLC**, except claims allowed in Class 13 or 20. | Impaired | There are no known Allowed Unsecured Claims in Class 19. All known unsecured claims against Rohrig Pollack, LLC are included in either Class 13 or 20. If it is determined the there are Allowed Unsecured Claims in Class 19, they will be paid in the manner provided for payment of Allowed Unsecured Claims in Class 14. |
| **Class 20** contains the Insider and Affiliate Claims. | Impaired | Allowed Claims in Class 20, anticipated to total approximately $12,111,706.96, will be paid pro-rata, the Profit Participation, until such claims are paid in full. |
| **Class 21** - Equity Interest Holders of the Debtors | Impaired | The Equity Interest Holders of the Reorganized Debtors will retain their equity interests and all associated rights, but will receive no distributions on account of such equity interests during any fiscal year except for the annual Income Tax Distribution until all Plan payments due during such year have been paid as provided by this Plan. |

All creditors and Equity Interest Holders should refer to Articles III and VI of this Plan for information regarding the precise treatment of their claims.  The Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors and Equity Interest Holders has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE I
## DEFINED TERMS, COMPUTATION OF TIME, AND
## RULES OF CONSTRUCTION

1.1     Defined Terms.

As used in the Plan and in the accompanying Disclosure Statement, capitalized terms have the meanings set forth on **Schedule 1** to this Plan.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.2     Other Definitional Provisions.

(i)     Accounting Terms.  Accounting terms which are not otherwise defined in this Plan have the meanings given to them under the Bankruptcy Code, the IRC, the Uniform Commercial Code, or GAAP, in that descending order of priority.  To the extent that the definition of an accounting term that is defined in this Agreement is inconsistent with the meaning of such term under GAAP, the definition set forth in this Plan will control.

(ii)     Construction.  Unless the context of this Plan otherwise clearly requires: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) references to any gender include the other genders, (c) the words "include," "includes" and "including" do not limit the preceding terms or words and shall be deemed to be followed by the words "without limitation," (d) the term "or" has the inclusive meaning represented by the phrase "and/or," (e) the terms "hereof," "herein," "hereunder," "hereto" and similar terms in this Plan refer to this Plan and the accompanying Disclosure Statement as a whole and not to any particular provision of this Plan; (f) the terms "day" and "days" mean and refer to calendar day(s); (g) the terms "year" and "years" mean and refer to calendar year(s); (h) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (i) any reference to any Entity as a holder of a Claim includes that Entity's successors, assigns, and affiliates; (j) all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (k) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather

10

than to a particular portion of the Plan; (l) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (m) subject to the provisions of any contract, articles of incorporation, code of regulations, similar constituent documents, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. All Article, Section, Exhibit and Schedule references herein are to Articles, Sections, Exhibits and Schedules of this Agreement, unless otherwise specified and the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

(iii)    <u>Computation of Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II
## <u>CLASSES OF CLAIMS AND INTERESTS</u>

2.1    <u>Classification Generally.</u>

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified, and, thus, are excluded from the following Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that the remainder of the Claim or Interest qualifies within the description of such other Classes. No Claim shall entitle a Creditor to a distribution of Cash or to other consideration pursuant to this Plan unless, and only to the extent that, such Claim is an Allowed Claim.

2.2    <u>Plan Classification</u>.

The classification of Claims against and Equity Interests in the Debtors pursuant to this Plan is as follows:

Class 1. Class 1 includes all assigned secured non-priority claims for unpaid *ad valorem* taxes, against any Debtor, expected to total approximately $324,528 as of the Effective Date, collateralized by assigned senior liens on the property against which each tax was assessed and constituting a general lien on all real property of the Estate of the respective Debtor taxpayer. Class 1 is impaired.

Class 2. Class 2 contains all Allowed Secured Claims held by RREF BB Acquisitions, LLC ("<u>Rialto</u>"), totaling approximately $20,771,740.96 as of the Petition Date (and anticipated to be reduced to approximately $12,920,699 by the Effective Date through the return, sale, or abandonment if property subject to the liens of Rialto), which are cross-collateralized and cross-guaranteed, divided into the following subclasses. Class 2 is impaired.

**Class 2A**: Rialto Note Number 7000076344, of Cartel Properties Spalding Woods, LLC in the amount of $6,599,121.17, as of the Petition Date, formerly secured by the Spalding Woods Properties, which was transferred to Rialto in exchange for a credit against such note of $5,500,000, thereby reducing the remaining balance to approximately $1,099,121.17, and which continues to be secured by the property of the estate collateralizing the remaining Allowed Secured Claims in Class 2.

**Class 2B**: Rialto Notes Number 7000076450 of 525 Moreland Avenue, LLC in the amount of $1,043,081.33 as of the Petition Date;  and Number 7000076351, of Cartel Properties  II, LLC, in the amount of $933,457.95 as of the Petition Date; formerly secured by property described as the Moreland Assemblage. The "Moreland Assemblage" consists of property located at 525 Moreland Avenue, 515 Moreland Avenue, 531 Moreland Avenue, 537 Moreland Avenue, 1131 Glenwood Avenue, 1152 Portland Avenue, and 1146 Portland Avenue, Atlanta, Fulton County, Georgia. The Moreland Assemblage is being sold under this Plan, with estimated net proceeds of up to $2,650,000, but not less than $1,400,000, to be credited against such notes, thereby reducing the remaining balance to approximately $0.00, and producing a credit for application against the remaining indebtedness in Class 2.  Any remaining indebtedness will continue to be secured by the property of the estate collateralizing the remaining Allowed Secured Claims in Class 2.

**Class 2C**: Rialto Note Number 7000076468, of 431 W. Ponce De Leon, LLC,  in the amount of  $1,574,288.09 as of the Petition Date, secured by property located at 415-431 W. Ponce de Leon Ave., Atlanta, Fulton County, Georgia, and by the property of the estate collateralizing the remaining Allowed Secured Claims in Class 2.

**Class 2D**: Rialto Note Number 7000076435, of Rohrig Pollack, LLC in the amount of $482,543.75 as of the Petition Date, secured by property located at 2977 E. Ponce De Leon Ave., Atlanta, Fulton County, Georgia, and by the property of the estate collateralizing the remaining Allowed Secured Claims in Class 2.  The Allowed Amount of the Class 2D Claim has been reduced by $376,042.25 from the proceeds of an insurance Check and by $110,000, representing the proceeds of a foreclosure sale of 2977 E. Ponce De Leon Ave.  The remainder of the Allowed Claim in Class 2D is collateralized by a junior lien on the property collateralizing the remaining Claims in Class 2.

**Class 2E**: Rialto Note Number 7000076401, of Rohrig Investments, LP in the amount of $1,300,146.97 as of the Petition Date, secured by property located at 246-254 W. Ponce de Leon Ave., Atlanta, Fulton

County, Georgia, and by the property of the estate collateralizing the remaining Allowed Secured Claims in Class 2.

**Class 2F**: Rialto Note Number 7000076427, of Rohrig Investments, LP in the amount of $2,602,513.92, as of the Petition Date, secured by property located at 3084 Roswell Rd, Atlanta, Fulton County, Georgia, and by the property of the estate collateralizing the remaining Allowed Secured Claims in Class 2.

**Class 2G**: Rialto Note Number 7000076369, of Rohrig Investments, LP in the amount of $497,441.44 as of the Petition Date, secured by property located at 422 & 432 E. Howard Ave and 118 Hillyer Place, Atlanta, Fulton County, Georgia, and by the property of the estate collateralizing the remaining Allowed Secured Claims in Class 2. The Allowed Secured Claim in Class 2G is expected to be paid in full from the sale of the property collateralizing such Claim.

**Class 2H**: Rialto Note Number 7000076419, of Rohrig Investments, LP in the amount of $1,939,374.89 as of the Petition Date, secured by property located at 340 E. Paces Ferry Rd, Atlanta, Fulton County, Georgia, and by the property of the estate collateralizing the remaining Allowed Secured Claims in Class 2.

**Class 2I**: Rialto Note Number 7000076393, of Rohrig Investments, LP in the amount of $492,333.56 as of the Petition Date, secured by property located at 2670-2676 East College Ave, Atlanta, Fulton County, Georgia, and by the property of the estate collateralizing the remaining Allowed Secured Claims in Class 2.

**Class 2J**: Rialto Note Number 7000076385, of Rohrig Investments, LP in the amount of $217,840.13 as of the Petition Date, secured by property located at 2812 East College Ave, Atlanta, Fulton County, Georgia, and by the property of the estate collateralizing the remaining Allowed Secured Claims in Class 2.

**Class 2K**: Rialto Note Number 7000076377, of Rohrig Investments, LP in the amount of $638,382.15 as of the Petition Date, secured by property located at 422 & 432 E. Howard Ave, Atlanta, Fulton County, Georgia, and by the property of the estate collateralizing the remaining Allowed Secured Claims in Class 2. The Allowed Secured Claim in Class 2K is expected to be paid in full from the sale of the property collateralizing such Claim.

**Class 2L**: Rialto Note Number 7000076344, of Cartel Properties II, LLC in the amount of $2,451,215.63 as of the Petition Date, secured by 1465

Howell Mill Road, Atlanta, Fulton County, Georgia, and by the property of the estate collateralizing the remaining Allowed Secured Claims in Class 2.

**Class 3**.  Class 3 includes the non-recourse Allowed Secured Claim of Bank of North Georgia, against Cartel Properties II, LLC, in the approximate amount of $2,788,777.16 as of the Petition Date, collateralized by a senior lien on property located at 2575 Peachtree Road, Units 19A and 19B and by property located at 268 E. Paces Ferry Road, Atlanta, Fulton County, Georgia.  Class 3 is impaired.

**Class 4**.  Class 4 includes the Allowed Secured Claim of Green Tree Servicing, LLC/America's Wholesale Lender, against Cartel Properties II, LLC, in the approximate amount of $259,177.87 as of the Petition Date, and estimated at $253,000 on the Effective Date, collateralized by a junior lien on property located at 2575 Peachtree Road, Units 19A and 19B, Atlanta, Fulton County, Georgia.  Class 4 is impaired.

**Class 5**.  Class 5 includes the non-recourse Allowed Secured Claim of Chase Mortgage, against Cartel Properties II, LLC, in the approximate amount of $9,076.51 as of the Petition Date, and estimated at $6,500 on the Effective Date, collateralized by property located at 3057 Pharr Court, Unit G-3, Atlanta, Fulton County, Georgia.  Class 5 is impaired.

**Class 6**.  Class 6 includes the non-recourse Allowed Secured Claim of CitiMortgage, Inc., against Cartel Properties II, LLC, in the approximate amount of $450,294.20 as of the Petition Date, and estimated at $443,119 on the Effective Date collateralized by property located at 10 Venetian Way, #504, Miami, Miami-Dade County, Florida.  Class 6 is impaired.

**Class 7**.  Class 7 includes the contingent, non-recourse Allowed Secured Claim of Midtown Bank & Trust Company, against Cartel Properties II, LLC, in the approximate amount of $3,888,296.00, collateralized by property located at 5965 Covington Highway, Decatur, Dekalb County, Georgia.  Class 7 is unimpaired.

**Class 8**.  Class 8 includes the non-recourse Allowed Secured Claim of Regions Bank, against Cartel Properties II, LLC, in the approximate amount of $176,461 as of the Petition Date, collateralized by Cartel Properties II, LLC's 50% undivided interest in property located at 433 N. McDonough Street, Decatur, Dekalb County, Georgia.  Class 8 is unimpaired.

**Class 9**.  Class 9 includes the Allowed Secured Claim of Oneaveious D. Lester against Rohrig Investments, LP, in the approximate amount of $55,223.60 as of the Petition Date, and estimated at $36,928 on the Effective Date, collateralized by a senior lien on property located at 2271 Cascade Road, Atlanta, Fulton County, Georgia.  Class 9 is unimpaired.

**Class 10**.  Class 10 includes the Allowed Secured Claim of State Bank and Trust, against Rohrig Investments, LP, in the approximate amount of $330,000.00 as of the Petition Date, and estimated at $330,000,on the Effective Date, collateralized by a junior lien on property located at 246 W. Ponce de Leon Ave, Atlanta, Fulton County, Georgia.  Class 10 is impaired.

**Class 11**.  Class 11 includes the Allowed Secured Claim of Touchmark National Bank, against Rohrig Investments, LP, in the approximate amount of $681,856.30 as of the Petition Date, collateralized by a senior lien on property located at 2781 East College Ave. Decatur, Dekalb County, Georgia, and guaranteed by the United States Small Business Administration.  Class 11 is unimpaired.

**Class 12**.  Class 12 includes the non-recourse Allowed Secured Claim of Wells Fargo Bank, N.A., against Rohrig Investments, LP, in the approximate amount of $1,000,000.00 as of the Petition Date, collateralized by a senior lien on property located at 805 Peachtree Street, #620, Atlanta, Fulton County, Georgia.  Class 12 is impaired.

**Class 13**.  Class 13 includes all Convenience Class Claims against any Debtor of $3,000 or less.  Class 13 is impaired.

**Class 14**.  Class 14 includes all Allowed Unsecured Claims against 431 W. Ponce de Leon, LLC, except claims allowed in Class 13 or 20.  Class 14 is impaired.

**Class 15**.  Class 15 includes all Allowed Unsecured Claims against Cartel Properties Spalding Woods, LLC, other than Claims classified in Class 13 or 20. Class 15 is impaired.

**Class 16**.  Class 16 includes all Allowed Unsecured Claims against 525 Moreland Avenue, LLC, except claims allowed in Class 13 or 20.  Class 16 is impaired.

**Class 17**.  Class 17 includes all Allowed Unsecured Claims against Cartel Properties II, LLC, except claims allowed in Class 13 or 20.  Class 17 is impaired.

**Class 18**.  Class 18 includes the claims against Rohrig Investments, LP, of the Bank of North Georgia, Brookhaven Bank, and Georgia Primary Bank.  Class 18 is impaired.

**Class 18A**.  Class 18A includes all Allowed Unsecured Claims against Rohrig Investments, LP, except claims allowed in Class 13, 18, or 20.  Class 18A is impaired.

**Class 19**.  Class 19 includes all Allowed Unsecured Claims against Rohrig Pollack, LLC, except claims allowed in Class 13 or 20.  Class 19 is impaired.

**Class 20**.   Class 20 includes the Insider and Affiliate Claims.   Class 20 is impaired.

**Class 21**.   Class 21 includes all Equity Interests in the Debtors.   Class 21 is impaired.

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

Subject to all applicable provisions of this Plan, Allowed Claims and Equity Interests will be paid or otherwise provided for under this Plan as follows:

3.1      Unclassified Claims.

3.1.1    Administrative Claims.

Statutory Fees:  Allowed Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash, in full, as such fees become due.

Fee Claims:  Professionals having Allowed Fee Claims shall be paid in full, in Cash, by the Debtors or the Reorganized Debtors in accordance with the Order Establishing Compensation Procedures for Professionals entered in the bankruptcy cases on July 8, 2013 (Dkt. 209) on the date upon which the Bankruptcy Court order allowing such Fee Claim becomes a Final Order. Upon entry of the Confirmation Order, the Debtors shall set aside in escrow any unpaid amounts estimated to be owed to Professionals for Fee Claims through the Effective Date (less amounts previously paid or paid on an interim basis after Confirmation as authorized by the Administrative Fee Order) pending entry of a Final Order on each such Professionals' application for Allowance of its Fee Claim.  After the Effective Date, Professionals of the Reorganized Debtors shall be compensated as set forth below in this Plan.

General Administrative Claims:   Except to the extent the holder of an Allowed Administrative Claim agrees to other, lesser treatment, and except with respect to Cure Costs, each holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim the full amount thereof, in Cash, by the later of (i) the Effective Date, or (ii) the date on which such Claim becomes an Allowed Administrative Claim.

Cure Cost Claims:  Cure Costs Claims shall be paid as described in Section 5.2 of the Plan.

**Bar Dates for Other Administrative Claims and Rejection Claims**.

(i)      General Administrative Bar Date Provisions.   The holder of an Administrative Claim or a Rejection Claim *other than* (1) a Fee Claim, (2) a Post-petition Obligation incurred and payable in the ordinary course of business by Debtors (and not past due, but excluding personal injury claims  – the holders of which must initiate an appropriate procedure for allowance thereof under this subparagraph of this Plan on or before the Administrative Bar Date), (3) statutory fees payable pursuant to 28 U.S.C. § 1930, (4) an Administrative Claim that has been Allowed on or before the Effective Date, and (5) a Cure Cost Claim, must File and serve on the Debtors, any Committee, and the United States Trustee, a request for payment of such Administrative Claim within the later of thirty (30) days after service of notice of entry of the Confirmation Order to the last known addresses of such holders (the "Administrative Bar Date").  Such request must include at a minimum (a) the name and address of the holder of the Claim, (b) the amount of the Claim, and (c) the basis of the Claim.  ***Failure to File and serve such request timely and properly shall result in the Administrative Claim being forever barred and discharged.***  Objections to general Administrative Claims must be Filed and served on the parties that were served with such Claims or requests and the requesting party by the later of (a) 30 days after the Effective Date; (b) 30 days after the Filing of the applicable request for payment of Administrative Claims; or (c) such later date as provided for by order of the Bankruptcy Court, which order may be entered upon application of the Reorganized Debtors without further notice or hearing (the "Administrative Claim Objection Deadline").  ***The holders of the Administrative Claims enumerated in (1) – (5) above of this paragraph shall not be required to file a request for payment of their Administrative Claims, and shall be paid as specified in this Article.***

(ii)      Bar Dates for Fee Claims for Professionals or other Entities asserting a Fee Claim for services rendered *before* the Effective Date.   Such Professionals and Entities must File and serve on the United States Trustee, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 60 days after service of the notice of entry of the Confirmation Order.  ***Failure to File timely and serve such application shall result in the Fee Claim being forever barred and discharged.***  Objections to any Fee Claim must be Filed and served on the parties that were served with such application and the requesting party by the later of (a) 30 days after the Effective Date; (b) 30 days after the filing of the applicable request for payment of the Fee Claim; or (c) such later date as provided for by order of the Bankruptcy Court (the "Fee Objection Deadline").

### 3.1.2   Priority Tax Claims.

Each holder of an unassigned Allowed Priority Tax Claim will be paid in respect of such Allowed Claim (including with respect to any interest that is determined to be part of its Allowed Claim), at the option of the Reorganized Debtors, (a) the full amount thereof, in Cash, by the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim; or (b) payment in Cash installments with statutory interest thereon on each anniversary of the Effective Date, until the fifth anniversary of the Petition Date (provided that the Reorganized Debtors may prepay the balance of any such Allowed Priority Tax Claim, including accrued Plan Interest through the payment date, and shall do so prior to the Final Distribution Date); or (c)

shall receive such lesser amount or other treatment as the holder of an Allowed Priority Tax Claim and the Companies or the Reorganized Debtors might otherwise agree.  Classified Claims

      3.1.1   <u>General Statement Regarding Treatment of Claims and Interests.</u>  The treatment of and consideration to be received by holders of Allowed Claims and Interests pursuant to this Article III of the Plan shall be in full and in complete satisfaction, settlement, and release of the Estate's obligations with respect to such Claims and Interests.  The Estate's obligations in respect of such Claims and Interests shall be satisfied in accordance with the terms of this Plan.

      3.1.2   <u>Treatment of Claims in Class 1 (Secured Claims), including all subclasses.</u>

      (a)   <u>Class 1.</u>  Holders of Allowed Secured Claims in Class 1 consisting of any unpaid Pre-petition *ad valorem* taxes assigned to non-governmental entities, expected to total approximately $324,528 on the Effective Date,  will be paid as provided under section 1129(a)(9)(C) of the Bankruptcy Code, in approximately 48 payments of approximately $7,510.91 each, which will be Pro-rated among Allowed Secured Claims in Class 1, provided, that with respect to property sold during the plan, the remaining balance owing to the Holder of an Allowed Secured Claim in Class 1 will be paid in full at the closing of the sale of such property.

      (b)   <u>Class 2.</u>  The holders of Allowed Secured Claims in Class 2 will be paid in full via regular monthly payments as follows:

      (i) The Reorganized Debtors shall execute and deliver to the holder of such Claim new promissory notes (each a <u>"Class 2 New Secured Note</u>") in an amount equal to the Allowed Amount of each Claim in Classes 2A – 2L, as determined by the Court.  The New Secured Notes shall be dated and delivered within 28 days after the later of (i) the Effective Date or (ii) the date on which the Allowed Amount of each Class 2 Claim is determined by agreement between the parties or by Final Order, and shall contain provisions sufficient to effectuate the terms hereof.  The amount of each Allowed Secured Claim in Classes 2A – 2L shall be determined in accordance with 11 U.S.C. §506 as of the Effective Date of this Plan.

      (ii) The outstanding principal balance of each New Secured Note shall be paid together with Plan Interest, calculated upon an amortization of such Allowed Secured Claim in 360 equal monthly installments totaling collectively approximately $60,434.07 each, commencing within seven (7) days from the date of the delivery of

each New Secured Note, with the balance due on the last day of the 120th month following the Effective Date.

       (iii) The New Secured Notes may be prepaid, in full or in part, at any time, without penalty.

       (iv) Holders of Allowed Secured Claims in Class 2 shall retain any liens securing such Allowed Secured Claim (as evidenced by existing security deeds, deeds of trust, assignments of rents and other security instruments) until the Claims are paid in full.  The Reorganized Debtors shall execute such amendments to such instruments as shall be necessary to reflect the new maturity dates of the obligations secured thereby.

       (v)  The Holder of the Allowed Secured Claim in Class 2 shall release each of the following properties from all liens collateralizing the Class 2 Claim upon receipt of the applicable Release Price, calculated upon the Stipulated Values shown on the following chart, or such lesser amount as may be agreed to by the Reorganized Debtors and the Holder of the Class 2 Claim:

| Debtor/Owner | Property Address | Stipulated Value |
|---|---|---|
| Cartel Properties II, LLC | 1465 Howell Mill Rd. (Atlanta, Fulton County) | $2,675,000 |
| Rohrig Investments, LP | 422-432 E. Howard Ave./ 118 Hillyer Ave (Decatur, DeKalb County) | $1,050,000 |
| Rohrig Investments, LP | 340 E. Paces Ferry Rd. (Atlanta, Fulton County) | $2,250,000 |
| Rohrig Investments, LP | 3084 Roswell Rd. (Atlanta, Fulton County) | $3,750,000 |
| Cartel Properties II, LLC, Rohrig Investments, LP, and 525 Moreland Avenue, LLC | Moreland Assemblage | $1,400,000 |
| Rohrig Investments, LP | 2812-2814 E. College Ave. (Avondale Estates, DeKalb County) | $85,000 |
| 431 W. Ponce de Leon, LLC | 431 W. Ponce  de Leon Ave. (Decatur, DeKalb County) | $3,500,000 |
| Rohrig Investments, LP | 246 W. Ponce de Leon Ave. (Decatur, Dekalb County) | $2,500,000 |
| Rohrig Investments, LP | 2670 E. College Ave. (Decatur, Dekalb County) | $450,000 |

(vi) The Reorganized Debtors and the holder of the Class 2 Claim, at any time after the Effective Date and by mutual agreement, can amend any New Secured Note and any other instruments, documents and agreements between them in accordance with applicable non-bankruptcy law, without complying with Section 10.1.3 of the Plan.

3.1.3    Treatment of Claims in Class 3.  (The Allowed Secured Claim of Bank of North Georgia, against Cartel Properties II, LLC, in the approximate amount of $2,788,777.16). Except to the extent the holder of the Allowed Secured Claim in Class 3 Claim agrees to other, lesser treatment, the holder of the Allowed Secured Claim in Class 3 Claim shall be paid in full, together with Plan Interest, at the closing of the sale of the property located at 268 E. Paces Ferry Road, Atlanta, Fulton County, Georgia securing such Allowed Secured Claim (as evidenced by existing security deeds, deeds of trust, assignments of rents and other security instruments).  If the Allowed Secured Claim in Class 3 is paid prior to the Effective Date, it shall be deemed to have accepted this Plan.  The Reorganized Debtors and any Holder of an Allowed Secured Claim in Class 3 shall execute such documents as shall be necessary to close the sale of such property. If such property is not sold prior to the Effective Date, then except to the extent the holder of the Allowed Secured Claim in Class 3 Claim agrees to other, lesser treatment, the holder of the Allowed Secured Claim in Class 3 Claim shall be paid in full, together with Plan Interest, in 360 equal monthly installments, with the balance due on the last day of the 120th month following the Effective Date.  The applicable Reorganized Debtor shall execute and deliver to the holder of such Claim a new promissory note ("The Class 3 New Secured Note") in an amount equal to the Allowed Amount of the Allowed Secured Claim in such Class, as determined by Stipulation of the Nature and Amount of the Claim or by the Court.  The New Secured Notes shall be dated and delivered within 28 days after the later of (i) the Effective Date or (ii) the date on which the Allowed Amount of the Class 3 Claim is determined, and shall contain provisions sufficient to effectuate the terms hereof.  Payments under the New Secured Note shall begin within seven (7) days after the date of the delivery of such note.  The New Secured Notes may be prepaid, in full or in part, at any time, without penalty.  The Holder of Allowed Secured Claim in Class 3 shall retain any senior lien on property located at 2575 Peachtree Road, Units 19A and 19B and upon property located at 268 E. Paces Ferry Road, Atlanta, Fulton County, Georgia securing such Allowed Secured Claim (as evidenced by existing security deeds, deeds of trust, assignments of rents and other security instruments) until the Claim is paid in full.  The Reorganized Debtors shall execute such amendments to such instruments as shall be necessary to reflect the new maturity dates of the obligations secured thereby.

3.1.4    Treatment of Claims in Class 4.  (The Allowed Secured Claim of Green Tree Servicing, LLC/America's Wholesale Lender, against Cartel Properties II, LLC, in the approximate amount of $259,177.87 as of the Petition Date and estimated at $253,000 on the Effective Date).  Except to the extent the holder of the Allowed Secured Claim in Class 4 Claim agrees to other, lesser treatment, the holder of the Allowed Secured Claim in Class 4 Claim shall be paid in full, together with Plan Interest, in 360 equal monthly installments, with the balance

due on the last day of the 120th month following the Effective Date. The applicable Reorganized Debtor shall execute and deliver to the holder of such Claim a new promissory note ("The Class 4 New Secured Note") in an amount equal to the Allowed Amount of the Allowed Secured Claim in such Class, as determined by Stipulation of the Nature and Amount of the Claim or by the Court. The New Secured Notes shall be dated and delivered within 28 days after the later of (i) the Effective Date or (ii) the date on which the Allowed Amount of the Class 4 Claim is determined, and shall contain provisions sufficient to effectuate the terms hereof. Payments under the New Secured Note shall begin within seven (7) days after the date of the delivery of such note. The New Secured Notes may be prepaid, in full or in part, at any time, without penalty. The Holder of Allowed Secured Claim in Class 4 shall retain any junior lien covering property located at 2575 Peachtree Road, Units 19A and 19B, Atlanta, Fulton County, Georgia securing such Allowed Secured Claim (as evidenced by existing security deeds, deeds of trust, assignments of rents and other security instruments) until the Claim is paid in full. The Reorganized Debtors shall execute such amendments to such instruments as shall be necessary to reflect the new maturity dates of the obligations secured thereby.

      3.1.5  <u>Treatment of Claims in Class 5.</u>  (The Allowed Secured Claim of Chase Mortgage, against Cartel Properties II, LLC, in the approximate amount of $9,076.51 as of the Petition Date and estimated at $6,500 on the Effective Date). Except to the extent the holder of the Allowed Secured Claim in Class 5 Claim agrees to other, lesser treatment, will be paid in full, together with Plan Interest, in equal monthly installments of approximately $314.89 each, commencing on the Effective Date. The applicable Reorganized Debtor shall execute and deliver to the holder of such Claim a new promissory note ("The Class 5 New Secured Note") in an amount equal to the Allowed Amount of the Allowed Secured Claim in such Class, as determined by Stipulation of the Nature and Amount of the Claim or by the Court. The New Secured Notes shall be dated and delivered within 28 days after the later of (i) the Effective Date or (ii) the date on which the Allowed Amount of the Class 5 Claim is determined, and shall contain provisions sufficient to effectuate the terms hereof. Payments under the New Secured Note shall begin within seven (7) days after the date of the delivery of such note. The New Secured Notes may be prepaid, in full or in part, at any time, without penalty. The Holder of Allowed Secured Claim in Class 5 shall retain any liens covering property located at 3057 Pharr Court, Unit G-3, Atlanta, Fulton County, Georgia securing such Allowed Secured Claim (as evidenced by existing security deeds, deeds of trust, assignments of rents and other security instruments) until the Claim is paid in full. The Reorganized Debtors shall execute such amendments to such instruments as shall be necessary to reflect the new maturity dates of the obligations secured thereby.

      3.1.6  <u>Treatment of Claims in Class 6</u>.  (The Allowed Secured Claim of CitiMortgage, Inc., against Cartel Properties II, LLC, in the approximate amount of $450,294.20 as of the Petition Date and estimated at $443,119 on the Effective Date). Except to the extent the holder of the Allowed Secured Claim in Class 6 Claim agrees to other, lesser treatment, the holder of the Allowed Secured Claim in Class 6 Claim shall be paid in full, together with Plan Interest, in 360 equal monthly installments of approximately $2,446.92 each, with the balance due on the last day of the 120th month following the Effective Date.. The applicable Reorganized Debtor shall execute and deliver to the holder of such Claim a new promissory note

("The Class 6 New Secured Note") in an amount equal to the Allowed Amount of the Allowed Secured Claim in such Class, as determined by Stipulation of the Nature and Amount of the Claim or by the Court.  The New Secured Notes shall be dated and delivered within 28 days after the later of (i) the Effective Date or (ii) the date on which the Allowed Amount of the Class 6 Claim is determined, and shall contain provisions sufficient to effectuate the terms hereof.  Payments under the New Secured Note shall begin within seven (7) days after the date of the delivery of such note.  The New Secured Notes may be prepaid, in full or in part, at any time, without penalty.  The Holder of Allowed Secured Claim in Class 6 shall retain any liens covering property located at 10 Venetian Way, #504, Miami, Miami-Dade County, Florida securing such Allowed Secured Claim (as evidenced by existing security deeds, deeds of trust, assignments of rents and other security instruments) until the Claim is paid in full.  The Reorganized Debtors shall execute such amendments to such instruments as shall be necessary to reflect the new maturity dates of the obligations secured thereby.

      3.1.7   <u>Treatment of Claims in Class 7</u>.  (The contingent, non-recourse Allowed Secured Claim of Midtown Bank & Trust Company, against Cartel Properties II, LLC, in the approximate amount of $3,888,296.00).  Class 7 in unimpaired.  Except to the extent the holder of the Allowed Secured Claim in Class 7 Claim agrees to other, lesser treatment, the holder of the Allowed Secured Claim in Class 7 Claim shall be paid in full, in accordance with its contract by the party primarily obligated thereon, and the legal, equitable, and contractual rights to which such claim entitles the Holder are unaltered by this Plan, except that, notwithstanding any contractual provision or applicable law that entitles the holder of such claim to demand or receive accelerated payments of such claim after the occurrence of a non-monetary default, the maturity date of such obligation shall be deemed reinstated by this Plan, all nonmonetary defaults with respect to such Claim shall be deemed cured, and the holder of the Class 7 Claim shall, by the Administrative Bar Date, file a Motion under 11 U.S.C. §503 for allowance of an Administrative Claim for any actual pecuniary loss incurred by such holder on account of any non-monetary default under the documents evidencing the obligation giving rise to such Claim, or any such claims shall be deemed forever waived and barred.  Any such Administrative Claim allowed by the Court shall be paid by the Reorganized Debtor obligated thereon within seven (7) days from the date such an Order allowing such claim as an Administrative Claim becomes a Final Order.  The Holder of Allowed Secured Claim in Class 7 shall retain any liens covering 999 Brady Avenue, N.W., Atlanta, Fulton County, Georgia, or 5965 Covington Highway, Decatur, Dekalb County, Georgia securing such Allowed Secured Claim (as evidenced by existing security deeds, deeds of trust, assignments of rents and other security instruments) until the Claim is paid in full.

      3.1.8   <u>Treatment of Claims in Class 8</u>.  (The Allowed Secured Claim of Regions Bank, against Cartel Properties II, LLC, in the approximate amount of $176,461).  Class 8 in unimpaired.  Except to the extent the holder of the Allowed Secured Claim in Class 8 Claim agrees to other, lesser treatment, the holder of the Allowed Secured Claim in Class 8 Claim shall be paid in full, in accordance with its contract by the party primarily obligated thereon, and the legal, equitable, and contractual rights to which such claim entitles the Holder are unaltered by this Plan, except that, notwithstanding any contractual provision or applicable law that entitles the holder of such claim to demand or receive accelerated payments of such claim after the

occurrence of a non-monetary default, the maturity date of such obligation shall be deemed reinstated by this Plan, all nonmonetary defaults with respect to such Claim shall be deemed cured, and the holder of the Class 8 Claim shall, by the Administrative Bar Date, file a Motion under 11 U.S.C. §503 for allowance of an Administrative Claim for any actual pecuniary loss incurred by such holder on account of any non-monetary default under the documents evidencing the obligation giving rise to such Claim, or any such claims shall be deemed forever waived and barred.   Any such Administrative Claim allowed by the Court shall be paid by the Reorganized Debtor obligated thereon within seven (7) days from the date such an Order allowing such claim as an Administrative Claim becomes a Final Order. The Holder of Allowed Secured Claim in Class 8 shall retain any liens covering the 50% undivided interest held by Cartel Properties II, LLC, in property located at 433 N. McDonough Street, Decatur, Dekalb County, Georgia securing such Allowed Secured Claim (as evidenced by existing security deeds, deeds of trust, assignments of rents and other security instruments) until the Claim is paid in full.

        3.1.9   <u>Treatment of Claims in Class 9</u>.   (The Allowed Secured Claim of Oneaveious D. Lester against Rohrig Investments, LP, in the approximate amount of $55,223.60 as of the Petition Date and estimated at $36,928 on the Effective Date).  Class 9 in unimpaired. Except to the extent the holder of the Allowed Secured Claim in Class 9 Claim agrees to other, lesser treatment, the holder of the Allowed Secured Claim in Class 9 Claim shall be paid per terms of existing note in approximately 24 monthly installments of 2,025.58 each by the party primarily obligated thereon, and the legal, equitable, and contractual rights to which such claim entitles the Holder are unaltered by this Plan, except that, notwithstanding any contractual provision or applicable law that entitles the holder of such claim to demand or receive accelerated payments of such claim after the occurrence of a non-monetary default, the maturity date of such obligation shall be deemed reinstated by this Plan, all nonmonetary defaults with respect to such Claim shall be deemed cured, and the holder of the Class 9 Claim shall, by the Administrative Bar Date, file a Motion under 11 U.S.C. §503 for allowance of an Administrative Claim for any actual pecuniary loss incurred by such holder on account of any non-monetary default under the documents evidencing the obligation giving rise to such Claim, or any such claims shall be deemed forever waived and barred.   Any such Administrative Claim allowed by the Court shall be paid by the Reorganized Debtor obligated thereon within seven (7) days from the date such an Order allowing such claim as an Administrative Claim becomes a Final Order. The Holder of Allowed Secured Claim in Class 9 shall retain any liens covering 2271 Cascade Road,  Atlanta, Fulton County, Georgia securing such Allowed Secured Claim (as evidenced by existing security deeds, deeds of trust, assignments of rents and other security instruments) until the Claim is paid in full.

        3.1.10  <u>Treatment of Claims in Class 10</u>.   (The Allowed Secured Claim of State Bank and Trust, against Rohrig Investments, LP, in the approximate amount of $330,000.00 as of the Petition Date and Effective Date).  Except to the extent the holder of the Allowed Secured Claim in Class 10 Claim agrees to other, lesser treatment, the holder of the Allowed Secured Claim in Class 10 Claim shall be paid in full, together with Plan Interest, in 360 equal monthly installments of approximately $1,822.27 each, with the balance due on the last day of the 120th month following the Effective Date.   The applicable Reorganized Debtor shall execute and

deliver to the holder of such Claim a new promissory note ("The Class 10 New Secured Note") in an amount equal to the Allowed Amount of the Allowed Secured Claim in such Class, as determined by Stipulation of the Nature and Amount of the Claim or by the Court. The New Secured Notes shall be dated and delivered within 28 days after the later of (i) the Effective Date or (ii) the date on which the Allowed Amount of the Class 10 Claim is determined, and shall contain provisions sufficient to effectuate the terms hereof. Payments under the New Secured Note shall begin within seven (7) days after the date of the delivery of such note. The New Secured Notes may be prepaid, in full or in part, at any time, without penalty. The Holder of Allowed Secured Claim in Class 10 shall retain any liens covering 246 W. Ponce de Leon Ave, Atlanta, Fulton County, Georgia securing such Allowed Secured Claim (as evidenced by existing security deeds, deeds of trust, assignments of rents and other security instruments) until the Claim is paid in full. The Reorganized Debtors shall execute such amendments to such instruments as shall be necessary to reflect the new maturity dates of the obligations secured thereby.

      3.1.11 <u>Treatment of Claims in Class 11</u>. (The Allowed Secured Claim of Touchmark National Bank, against Rohrig Investments, LP, in the approximate amount of $681,856.30). Class 11 in unimpaired. Except to the extent the holder of the Allowed Secured Claim in Class 11 Claim agrees to other, lesser treatment, the holder of the Allowed Secured Claim in Class 11 Claim shall be paid in full, in accordance with its contract by the party primarily obligated thereon, and the legal, equitable, and contractual rights to which such claim entitles the Holder are unaltered by this Plan, except that, notwithstanding any contractual provision or applicable law that entitles the holder of such claim to demand or receive accelerated payments of such claim after the occurrence of a non-monetary default, the maturity date of such obligation shall be deemed reinstated by this Plan, all nonmonetary defaults with respect to such Claim shall be deemed cured, and the holder of the Class 11 Claim shall, by the Administrative Bar Date, file a Motion under 11 U.S.C. §503 for allowance of an Administrative Claim for any actual pecuniary loss incurred by such holder on account of any non-monetary default under the documents evidencing the obligation giving rise to such Claim, or any such claims shall be deemed forever waived and barred. Any such Administrative Claim allowed by the Court shall be paid by the Reorganized Debtor obligated thereon within seven (7) days from the date such an Order allowing such claim as an Administrative Claim becomes a Final Order. The Holder of Allowed Secured Claim in Class 11 shall retain any liens covering 2781 East College Ave. Decatur, Dekalb County, Georgia securing such Allowed Secured Claim (as evidenced by existing security deeds, deeds of trust, assignments of rents and other security instruments) until the Claim is paid in full.

      3.1.12 <u>Treatment of Claims in Class 12</u>. (The Allowed Secured Claim of Wells Fargo Bank, N.A., against Rohrig Investments, LP, in the approximate amount of $1,000,000.00). Except to the extent the holder of the Allowed Secured Claim in Class 12 Claim agrees to other, lesser treatment, the holder of the Allowed Secured Claim in Class 12 Claim shall be paid in full, together with Plan Interest, in 360 equal monthly installments of approximately $5,522.04 each, with the balance due on the last day of the 120th month following the Effective Date. The applicable Reorganized Debtor shall execute and deliver to the holder of such Claim a new promissory note ("The Class 12 New Secured Note") in an amount equal to

the Allowed Amount of the Allowed Secured Claim in such Class, as determined by Stipulation of the Nature and Amount of the Claim or by the Court.  The New Secured Notes shall be dated and delivered within 28 days after the later of (i) the Effective Date or (ii) the date on which the Allowed Amount of the Class 12 Claim is determined, and shall contain provisions sufficient to effectuate the terms hereof.  Payments under the New Secured Note shall begin within seven (7) days after the date of the delivery of such note.  The New Secured Notes may be prepaid, in full or in part, at any time, without penalty.  The Holder of Allowed Secured Claim in Class 12 shall retain any liens covering 805 Peachtree Street, #620, Atlanta, Fulton County, Georgia securing such Allowed Secured Claim (as evidenced by existing security deeds, deeds of trust, assignments of rents and other security instruments) until the Claim is paid in full.  The Reorganized Debtors shall execute such amendments to such instruments as shall be necessary to reflect the new maturity dates of the obligations secured thereby.

        3.1.13  <u>Treatment of Claims in Class 13 (Convenience Class Claims).</u>  Holders of Allowed Claims in Class 13 (anticipated to total approximately $18,283.70) will be paid in full on the Effective Date.

        3.1.14  <u>Treatment of Claims in Classes 14, 15, 16, 17, 18A, and 19 (Allowed Unsecured Claims other than Convenience Class Claims, Insider Claims, and Claims in Class 18A).</u>  There are no known Allowed Unsecured Claims in Classes 14, 15, 16, 17, 18A and 19.  All known unsecured claims are included in either Classes 13, 18, or 20.  If it is determined the there are Allowed Unsecured Claims in Class 14, they will be paid in full, together with Plan Interest in 48 equal monthly installments commencing on the Effective Date.

        3.1.15  <u>Treatment of Claims in Class 18.</u>  Claims in Class 18, which may total as much as $2,853,608.27, include the obligations of Rohrig Investments to: (i) the Bank of North Georgia for a $1,448,369.00 line of credit owed by Rohrig Investments, LP as the primary obligor, and secured by property owned by 878 Peachtree Rd, LLC, located at Peachtree Lofts Condominium, Unit # CU-1, 878 Peachtree Road, Atlanta, Fulton County, Georgia; (ii) Brookhaven Bank in the amount of $943,278.27 for a line of credit owed by Rohrig Investments, LP as the primary obligor, and secured by property of 891 Howell Mill Road, LLC, located at 891 Howell Mill Road, Atlanta, Fulton County, Georgia; and (iii) Georgia Primary Bank in the amount of $461,961.00 for a line of credit owed by Rohrig Investments, LP as the primary obligor, and secured by property of George and Dana, LLC, located at 240 Dekalb Industrial Way, Decatur, Dekalb County, Georgia.  These obligations will be paid in full per terms of existing notes by the property owners. The notes will remain as recourse obligations of Rohrig Investments, LP.  All non-monetary defaults under the notes shall be deemed cured and waived, including, without limitation, the prior transfer of any collateral to the current owners without written consent of the respective lender.  The New Secured Notes may be prepaid, in full or in part, at any time, without penalty.  The Holders of Allowed Claims in Class 18 shall retain any liens covering the real properties and rents securing such Allowed Claims (as evidenced by existing security deeds, deeds of trust, assignments of rents and other security instruments) until the Claims are paid in full.  The Reorganized Debtors and the current owners shall execute such amendments to such instruments as shall be necessary continue such liens.

3.1.16  <u>Treatment of Claims in Class 20 (Insider and Affiliate Claims)</u>.  Except to the extent the holder of the Allowed Secured Claim in Class 20 Claim agrees to other, lesser treatment, the holder of the Allowed Secured Claim in Class 20 Claim shall be paid Pro-rata, from the Profit Participation on or before the 90th day following the end of each calendar year during the Plan, until such claims are paid in full. Class 20 is impaired

3.1.17  <u>Treatment of Class 21 (Equity Interests)</u>.  Equity Interests or the respective Reorganized Debtors in Class 21 will retain their equity interests and all associated rights, but will receive no distributions on account of such equity interests on account of income received by any Reorganized Debtor during any fiscal year during the consummation of this Plan, except for the annual Income Tax Distribution, until all payments provided for by this Plan during such fiscal year have been made.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

4.1  <u>Funding of this Plan.</u>

This Plan is a reorganizing Chapter 11 plan.  The funds required for implementation of this Plan and the distributions hereunder shall be provided from the proceeds from the regular operation of the Debtors' properties as projected in the Budget.  Any cash shortfall occurring following the Effective Date will be covered by subordinated loans advanced by George W. Rohrig or an Affiliate (which will be treated as Class 19 loans, notwithstanding that any advances will occur post-petition).

4.2  <u>The Reorganized Debtors.</u>

4.2.1 <u>Reorganized Debtors Joint Venture.</u>

(a)

(b)  <u>Summary</u>.  The Plan contemplates consolidation of the Debtors in the form of a joint venture (the "<u>Reorganized Debtors Joint Venture</u>" or the "<u>RDJV</u>") solely for all of those purposes and actions associated with confirmation and consummation of the Plan, including, without limitation, for purposes of voting on Confirmation.  On the Confirmation Date, and effective on and after the Effective Date, the Estate of each of the Debtors shall remain administratively consolidated for all purposes associated with confirmation and consummation of the Plan, including, without limitation, for purposes of voting and Confirmation.  The Management Company will operate the RDJV <u>Effect of the RDJV.</u>  On and after the Effective Date, (a) all assets of the Debtors shall be treated as though they were contributed (but not conveyed) for operational purposes to the RDJV; (b) the RDJV will service all Allowed Claims against any Debtor in the manner provided under this Plan, but without recourse to the RDJV; (c) for all purposes associated with Confirmation (including, without limitation, for purposes of tallying acceptances and rejections of the Plan), distributions, and reporting under the Plan, the Estates of the Debtors shall be deemed to be one consolidated Estate, provided, however, that (i) any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any

26

joint and several liability of any Debtor shall remain the separate obligation of each respective Debtor, and (ii) each and every Claim filed or to be filed in the Cases shall be deemed filed against the respective Debtor, only.

The RDJV shall not affect: (a) the legal and organizational structure of each Debtor; (b) any Pre and Post-petition guarantees, liens, and security interests that are required to be maintained (i) under the Bankruptcy Code or in connection with contracts or leases that were entered into during the Cases or executory contracts or unexpired leases that have been or will be assumed, or (ii) pursuant to the Plan; (c) distributions from any insurance policies or proceeds of such policies; and (d) the filing of tax returns by each Reorganized Debtor.

4.2.2    Role of the Reorganized Debtors Under the Plan. The Plan will be administered by the RDJV, acting through the Management Company, which will be vested with power and authority over all Assets of each respective Company and Estate, as a designated Plan Representative as provided under 11 U.S.C. §1123 (b)(3), with the obligation to make distributions in accordance with the Plan. The RDJV shall be deemed as of the Confirmation of the Plan to be the general representative of the respective Estate as authorized under and pursuant to the Bankruptcy Code, specifically including, without limitation, Section 1123(b)(3) of the Bankruptcy Code. The RDJV, acting through the Management Company, as Plan Representative shall also have standing to pursue Causes of Action on behalf of the respective Estates as the representatives of the Estates as provided under Section 544 of the Bankruptcy Code. The RDJV shall be indemnified by the Estates for fees and costs, including attorneys' fees, for any actions taken or not taken, except for those done with gross negligence or malicious intent.

4.2.3    Management of the Reorganized Debtors. The Reorganized Debtors will continue to operate themselves and be managed through Cartel Properties, Inc. (the "Management Company"),as has been the case during the pendency of these Bankruptcy Cases. Commencing as of the Effective Date, the Management Company will serve as Plan Representative under 11 U.S.C. §1123(b)(3). 4.2.3 Powers of the Reorganized Debtors. Except as otherwise provided in this Plan, the Reorganized Debtors, acting through the Management Company, shall be vested with and shall have all rights, powers, and duties that the Debtors-in-possession had immediately prior to Confirmation under Sections 1106, 1107, 1108 of the Bankruptcy Code and otherwise, including, without limitation, with respect to the Causes of Action (whether or not commenced as of Confirmation). The RDJV shall have exclusive control of the Assets, including, without limitation, the Causes of Action. The RDJV, acting through the Management Company, shall have authority to authorize the sale, refinance, abandonment, or other liquidation of any or all Assets. The Management Company, acting on behalf of the Reorganized Debtors, shall be the representative of the Estate and shall have the capacity to sue and be sued, as provided under Sections 323 and 1123(b)(3) of the Bankruptcy Code, and otherwise under the Plan or the Bankruptcy Code.

4.2.4    Overview of Duties of Reorganized Debtors. The Management Company, acting for the RDJV, shall be empowered to and shall make all distributions required to be made under this Plan, and the RDJV shall be authorized and empowered to fully act as of the Effective Date, including, without limitation, to (a) operate the Reorganized Debtors with full requisite

27

authority to implement this Plan, borrow money, purchase and sell assets, and take all further action as may be required in the best interests of the Reorganized Debtors and consummation of this Plan, (b) prosecute, settle, or release all Causes of Action, in accordance with the best interest of and for the benefit of the Creditors entitled to receive distributions under the Plan; (c) prosecute objections to Claims; (d) resolve Disputed Claims; (e) make distributions to the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, and holders of other Allowed Claims (as their respective interests may appear in accordance with this Plan) in as prompt, efficient, and orderly fashion as possible in accordance with the Plan; (f) perform administrative services related to the implementation of this Plan; (g) employ attorneys and other Professionals, as further set forth below, to assist in fulfilling the Reorganized Debtors' obligations under the Plan; and (h) otherwise act in accordance with the corporate governance of the Reorganized Debtors, this Plan, and orders of the Bankruptcy Court.  The Management Company shall operate the Reorganized Debtors substantially in conformity with the Budget, provided that departures from the Budget, standing alone, shall not constitute a default under this Plan.  The Budget is submitted to creditors as a template of future operations of the Reorganized Debtors to demonstrate feasibility of this Plan and is aspirational in nature.  Strict compliance with the Budget shall not be construed as a contractual obligation to creditors under this Plan.

4.2.5  <u>Plan Implementation Services</u>.  The Reorganized Debtors shall be authorized to take such actions as they may deem necessary to perform their obligations under the Plan and may, through the Management Company, retain the services of Professionals necessary to assist and advise the Reorganized Debtors in the performance of their duties under the Plan.  Compensation and reimbursement of expenses earned and incurred by Professionals performing services for the Reorganized Debtors after the Effective Date shall be paid by the Reorganized Debtors monthly after rendition of bills to the Reorganized Debtors, and no further applications for compensation or reimbursement of expenses shall be necessary or required unless a dispute arises.  In the event of any such dispute, the same shall be resolved by the Bankruptcy Court after notice and a hearing.

4.2.6  <u>Reports</u>.

(a)  <u>Post-Confirmation Operating Reports.</u>  After Confirmation, and until the entry of a Final Decree, the RDJV shall prepare and File a quarterly operating report if required by the United States Trustee and the Bankruptcy Rules, unless otherwise earlier excused by Order of the Bankruptcy Court.

(b)  <u>Tax Returns</u>.  The Reorganized Debtors shall cause to be prepared and filed all federal, state, or local tax returns required to be prepared and filed by the Debtors that have not been prepared or filed by the Effective Date, or which become due thereafter.

4.2.7  <u>Application for Final Decree</u>.  As soon as reasonably practicable following substantial consummation of this Plan, the Reorganized Debtors shall File a Final Report and application for Final Decree, if not previously filed.

4.2.8  Standard of Care for Reorganized Debtors; Exculpation.  The Management Company shall perform the duties and obligations imposed on the Reorganized Debtors by this Plan with reasonable diligence and care under the circumstances.  The Management Company, as Plan Representative, shall not be personally liable to the Creditors or to Persons entitled to receive distributions of Assets under the Plan, except for such of its own acts as shall constitute fraud, bad faith, willful misconduct, gross negligence or willful disregard of its duties.  Except as aforesaid, the Management Company shall be entitled to be exonerated and indemnified from time to time from the Assets against any and all losses, claims, costs, expenses, and liabilities arising out of or in connection with the Assets or the implementation of the Plan.  The foregoing provisions of this paragraph shall also extend to the employees, Professionals, and agents of the Management Company or the Reorganized Debtors, as the case may be.

4.2.9  Management Fee to Cartel Properties, Inc.  In consideration for the management of the Reorganized Debtors following the Effective Date, the Management Company (Cartel Properties, Inc.) shall be paid a monthly management fee equal to 5% of the gross revenues from the operation of each respective Property (excluding tax reimbursements and payments) plus 7% of the costs, calculated annually, as shown by the Budget.

# ARTICLE V
# TREATMENT OF EXECUTORY CONTRACTS
# AND UNEXPIRED LEASES

5.1     Assumption or Rejection of Executory Contracts.

All Tenant Leases at the Spalding Woods Shopping Center are rejected.  On the Confirmation Date, all other Executory Contracts and unexpired leases, including without limitation the Tenant Leases and Insurance Contracts, are deemed assumed, in accordance with the provisions of Sections 365 and 1123, and any other relevant provisions of, the Bankruptcy Code.

5.2     Cure Cost Claims.

Any Cure Costs associated with the assumed Tenant Leases will be paid by monthly recoupment via withholding of rent under the subject Tenant Leases, unless otherwise agreed with the other party to such Tenant Lease.  Any Cure Costs associated with other assumed Executory Contracts will be paid in full in three (3) monthly installments, commencing on the Effective Date.

Schedule 5.2 attached to the Disclosure Statement reflects the Debtors' good faith assertion as to the Cure Cost for each Executory Contract to be assumed.  Any Tenant Lease or Executory Contract not shown on Schedule 5.2 indicates that the Debtors believe there will be no default as of the Effective Date, and thus no Cure Costs required.  In the event of a dispute regarding: (a) the existence or amount of any Cure Costs, (b) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract to be assumed, or (c) any other matter pertaining to the assumption, the Debtors intend to attempt to resolve such dispute

consensually and, failing that, through order of the Bankruptcy Court. Either party to the Executory Contract which is the subject of the dispute may in its discretion file with the Bankruptcy Court a request for determination of the dispute within sixty (60) days after the Effective Date. In the event a request for determination is timely filed, the dispute shall be litigated to Final Order and shall then be paid by as outlined above for Tenant Leases or other Executory Contracts, as appropriate, unless otherwise consensually resolved by the parties to the Executory Contract. **Any party to an Executory Contract which is the subject to such a dispute who does not file a request for determination within such sixty (60) day period will waive its rights with respect to such dispute and will be forever barred from prosecuting such dispute, and the amount shown on such Schedule 5.2 as due and owing under such Executory Contract will become binding on the parties and their respective successors or assigns.**

### ARTICLE VI
### PAYMENT AND DISTRIBUTIONS ON CLAIMS

6.1    Manner of Payment

Any payment in Cash to be made by the Reorganized Debtors shall be made, at the election of the Reorganized Debtors, by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.2    Funds and Accounts for Payment of Claims and Plan Implementation.

As soon as practicable after the Effective Date, the Management Company, acting for the Reorganized Debtors shall or may establish and maintain the following funds and/or accounts to implement the Plan:

6.2.1    Disputed Claims Reserve.  As of and after the Effective Date, the Reorganized Debtors shall establish and maintain an interest-bearing account which shall be called the Disputed Claims Reserve, into which the Reorganized Debtors shall deposit potential distributions to holders of Disputed Claims in accordance with the terms of the Plan. Such Disputed Claims Reserve shall be maintained by the Reorganized Debtors until each Disputed Claim in each respective Class has been allowed or disallowed by Order of the Bankruptcy Court or has been settled via the provisions of the Plan. Thereafter, any excess funds in the Disputed Claims Reserve shall be transferred back to the Reorganized Debtors.

6.2.2    Plan Expense Reserve and Ad Valorem Tax Escrow.  On the Effective Date, or as soon thereafter as reasonably practicable, the Reorganized Debtors may create out of any funds not subject to a lien a reserve for Plan expenses, including costs necessary to adequately fund pursuit of Causes of Action which the Reorganized Debtors believe is likely to produce a recovery in excess of the costs of prosecution of such Causes of Action, and shall establish an Ad Valorem Tax Escrow Account. The Reorganized Debtors may reserve and transfer an appropriate amount of Cash into such

plan accounts as the Reorganized Debtors deems necessary and desirable to pay Plan expenses and ad valorem taxes efficiently and promptly.

      6.2.3   <u>Accounts Established Pursuant to the Plan</u>.   Monies deposited into any accounts established and maintained by the Reorganized Debtors under the Plan shall be invested as specified in this paragraph and need not comply with Section 345 of the Bankruptcy Code.   Any accounts established by the Reorganized Debtors shall be established at a federally-insured financial institution or may be invested in government-backed securities in a brokerage account approved by the United States Trustee.   For interest-bearing accounts, any interest earned upon balances on deposit in such accounts shall be used to fund this Plan.   The Reorganized Debtors may relocate any or all accounts to another federally-insured financial institution or approved brokerage account, from time to time, until all payments provided for under this Plan have been made.

    6.3   <u>Payment of Claims and Interests.</u>

Notwithstanding any other provision of this Plan, the Reorganized Debtors shall make no distribution to holders of Claims that are not Allowed Claims as defined in this Plan. Notwithstanding any other provision of this Plan, the Reorganized Debtors shall have discretion to make the distributions called for under the Plan at the times specified in the Plan, or earlier if the Reorganized Debtors deems such earlier distribution to be necessary or beneficial.

    6.4   <u>Disputed Claims.</u>

The following provisions of this Plan apply only to Claims that are Disputed Claims.

      6.4.1   <u>Allowed Claims; Disputed Claims Reserve.</u>

        (a)   For the purpose of calculating the distribution to holders of Allowed Claims in any Class (including any interest due to Allowed Claims in any such Class), the Reorganized Debtors shall add to the total of all Allowed Claims in such Class the face amount of any Proof of Claim filed by the holder of a Disputed Claim or, if no Proof of Claim has been filed, the amount shown by the Debtors' Schedules.   The resulting gross total of claims in such Class shall be used as a denominator of a fraction, the numerator of which shall be a dollar amount equal to the amount determined by the Reorganized Debtors to be available for distribution to such Class at such time.   The amount of each Allowed Claim shall then be multiplied by the resulting fraction, and the product rounded to the nearest dollar shall equal the amount of the distribution to each holder of an Allowed Claim in such Class.

        (b)   With respect to each Disputed Claim, the Reorganized Debtors shall deposit into the Disputed Claims Reserve any distribution which would have

been due to the holder of such Disputed Claim in the respective Class as if such Claim was an Allowed Claim, as calculated in 6.4.1(a).

**6.5** <u>Previously Disputed Claims that Are Subsequently Allowed.</u>

**6.5.1** <u>Distributions on Subsequently Allowed Claims</u>. Within fifteen (15) days from the date of which any order of the Bankruptcy Court allowing a previously Disputed Claim becomes a Final Order, with no appeal pending, or if an appeal is filed, the date on which all orders affirming allowance of such claims becomes non-appealable, the Reorganized Debtors shall withdraw from the Disputed Claims Reserve an amount equal to the amount deposited into the Disputed Claims Reserve on account of each previously Disputed Claim and shall then pay the holder of such previously Disputed Claim the amount due on such Claim as of the date of such distribution to its Class. No interest shall be payable on account of any delayed distribution unless such interest is a distribution of interest specifically set forth in the Plan and payable for that Class.

**6.5.2** <u>Allowance of Claims in Different Amount than Originally Calculated.</u> In the event a Disputed Claim (including Plan Interest or Residential Plan Interest) is finally Allowed in an amount less than the face amount of any Proof of Claim filed by the holder of such Disputed Claim or is subordinated, the Reorganized Debtors shall recalculate the accumulated distribution to all holders of Allowed Claims in the affected Class using the formula specified in section 6.4.1(a) above, and shall likewise recalculate the accumulated distribution due to the holder of the previously Disputed Claim. The dividend thus calculated to the holder of the previously Disputed Claim shall thereupon be paid out of the Operating Account to the holder of such Claim. The Reorganized Debtors shall transfer the balance to the General Fund or Operating Account, at its discretion, to be re-prorated for distribution to remaining Allowed Claims in the affected Class. For purposes of all subsequent distributions, the previously Disputed Claim shall be treated as an Allowed Claim and included in the appropriate Class and shall be paid accordingly with the rest of its Class.

**6.5.3** <u>Allowance of Claims in Different Amount than Originally Calculated.</u> Any Disputed Claim shall be paid in the amount as finally Allowed.

**6.5.4** <u>Recalculation if Disputed Claim is Re-characterized</u>. In the event a Disputed Claim is finally Allowed as a re-characterized Claim, the Reorganized Debtors shall withdraw from the Disputed Claims Reserve any amount deposited therein on account of such Claim, for distribution in accordance with the priority of payment scheme established by this Plan.

**6.5.5** <u>Allowance of Claims.</u>

Except as expressly provided in this Plan, the Reorganized Debtors after Confirmation will have and retain any and all rights and defenses that the Debtors had

with respect to any Claims as of the Petition Date, including the Causes of Action referenced in this Plan and the Disclosure Statement and the Filing of any motions or other pleadings for estimation of the amount of Disputed Claims.

6.5.6    Examination and Objections to Claims.

6.5.6.1 Examination.  Following the Effective Date, the Reorganized Debtors shall examine all Claims not previously objected to by the Debtors and shall have the responsibility of filing objections to the allowance of such Claims and continuing prosecutions of objections to Claims filed prior to the Effective Date.

6.5.6.2 Objection Deadlines.  Except as otherwise specified herein (including, without limitation, with respect to Administrative Claims, Fee Claims, and Cure Cost Claims), objections to Claims shall be Filed with the Bankruptcy Court and served upon Creditors by the Claims Objection Bar Date, which shall be no later than 120 days after the Effective Date or 90 days after such Claim is Filed, whichever date is later; provided, however, that this deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtors, without notice or a hearing. After an order, judgment, decree, or settlement agreement allowing a Disputed Claim becomes a Final Order, Distributions with respect to and on account of such previously Disputed Claim will be made on or before the time of the next scheduled distribution to holders of Allowed Claims in the Class in which the previously Disputed Claim is allowed.

6.5.6.3 Claims Resolution.  Objections to Claims may be litigated to judgment, settled, or withdrawn by the Reorganized Debtors.

6.5.6.4 Settlement of Disputed Claims.  The Reorganized Debtors have authority to settle any Claim without any notice or approval of any other party, unless such settlement would result in a decrease to the distribution provided to any other Allowed Claim under this Plan, in which event such settlement and impact on Allowed Claims will be noticed as provided under Bankruptcy Rule 9019, with a hearing to be conducted upon any objection filed pursuant to such notice.  Any settlement may be presented for approval to the Bankruptcy Court, upon the request of the Reorganized Debtors of the holder of the formerly disputed claim.

6.6    No Distributions to Holders of Disputed Claims.

Notwithstanding any other provision of this Plan, no Cash or other Property shall be distributed under the Plan on account of any Disputed Claim.

33

6.7    Estimation of Claims.

The Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any Claim pursuant to Section 502(c) of the Bankruptcy Code, as applicable, regardless of whether the Debtors or the Reorganized Debtors previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during the litigation concerning any objection to any Claims, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of Section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the Allowed amount of such Claim.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

6.8    Unclaimed Distributions.

Payment will be stopped on checks disbursed by the Reorganized Debtors to holders of Allowed Claims if such checks remain not cashed ninety (90) days after the date of disbursement.  The Cash represented by such checks shall be redistributed Pro Rata to holders of the remaining Allowed Claims, as provided under this Plan at the time of the next scheduled distribution to Allowed Claims hereunder.  No further distribution shall be made under this Plan to the holder of any Allowed Claim who fails to negotiate a check issued by the Reorganized Debtors on account of a claim for payment within the ninety (90) days after the date such check was mailed to the holder, and any unclaimed distribution on account of such Allowed Claim shall thereby be deemed waived.  Any distribution remaining unclaimed at the expiration of such ninety (90) day period shall become property of the Reorganized Debtors pursuant to Section 347(b) of the Bankruptcy Code.

6.9    Rounding of Dividend Amounts.

Notwithstanding any other provision of this Plan, the Reorganized Debtors shall not be required to make any distribution of less than $10.00 to the holder of any Allowed Unsecured Claim, and may round all distributions to Allowed Unsecured Claims the nearest $1.00.

6.10    Distributions to the Last Known Address.

Distributions to holders of Allowed Claims will be sent to the last known address set forth on such holder's Proof of Claim Filed with the Court, or on the Schedules, if no proof of Claim has been filed.  Holders of Claims may change the address to which distributions, will be sent by furnishing written notice to the Reorganized Debtors, in accordance with Article X hereof.  A proper notice of change of address will be effective for a distribution if received at least 30 days in advance of such distribution date.  U.S. Postal notifications of changes of

address will be honored, provided that the Reorganized Debtors shall have no obligation to investigate the address of the holder of an Allowed Claim following expiration of such U.S. Postal notifications.

### 6.11    Assignment of Claims.

Notwithstanding Bankruptcy Rule 3001(e), written notice of any assignment of an Allowed Claim shall be given to the Reorganized Debtors by the assignee thereof before the Reorganized Debtors shall be obligated to direct distributions to such assignee.  Absent receipt by the Reorganized Debtors of such written notice of assignment, neither the Reorganized Debtors, nor the Estate shall have any liability to any such assignee or to any other Person on account of a misdirected distribution.

### 6.12    Withholding or other Taxes.

Any federal, state, or local withholding or other taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

### 6.13    Setoffs.

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtors or the Reorganized Debtors, as applicable, may, but shall not be required to, setoff against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtors, as applicable, of any such Claim or other Claims, rights, or Causes of Action that the Debtors or the Reorganized Debtors may have against such holder.

### 6.14    Subordination Rights.

All subordination rights, claims, and defenses of the Debtors and Reorganized Debtors shall remain valid, enforceable, and unimpaired in accordance with Section 510 of the Bankruptcy Code or otherwise, except as otherwise specifically provided in this Plan.

## ARTICLE VII
## ACCEPTANCE OR REJECTION OF THE PLAN

### 7.1 Voting Classes.

The holders of Claims and Interests in all Classes (including all subclasses) that are impaired under the Plan, and, thus, are entitled to vote to accept or reject the Plan. Classes 7, 8, 9, and 11 are unimpaired and are deemed to have accepted the Plan.

7.2 <u>Class Acceptance Requirement</u>.

Only holders of Claims and Interests in a voting class and as to which an objection is not pending shall be entitled to vote to accept or reject the Plan, unless such claims have been estimated for purposes of voting.  A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan.

7.3 <u>Non-Consensual Confirmation.</u>

If any class of Claims or interests votes to reject the Plan or is deemed to reject the Plan, the Plan shall constitute a request that the Bankruptcy Court confirm the Plan over such rejection in accordance with Section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan or the Disclosure Statement, including any exhibit or attachment, if necessary to satisfy the requirements of Section 1129(b) of the Bankruptcy Code.

## ARTICLE VIII
## EFFECTS OF CONFIRMATION

8.1 <u>Discharge of Debtors</u>

Under the Plan, the effects of Confirmation shall be as provided under Sections 1141(a)-(d) and Section 524(a) of the Bankruptcy Code.  The Debtors shall be discharged upon Confirmation of the Plan.

8.2      <u>Exculpation and Limitation of Liability</u>.

The Management Company, the RDJV, and each of their respective members, officers, directors, agents, attorneys, and employees (including Professionals) (collectively, the "<u>Exculpated Persons</u>") shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken by any Exculpated Person in connection with or related to the formulation, negotiation, preparation, dissemination, implementation, administration, Confirmation, or consummation of this Plan, the Disclosure Statement or any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan (except for any obligations of the Reorganized Debtors, the Estate, or the Reorganized Debtors arising in the ordinary course of business).  The Exculpated Persons shall have no liability to any Debtor, holder of a Claim, holder of an Interest, other party in interest in the Bankruptcy Case or any other Person for actions taken or not taken under this Plan, in connection herewith or with respect hereto, or arising out of their administration of this Plan or the property to be distributed under this Plan, including failure to obtain Confirmation of this Plan or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or with respect to the Bankruptcy Case.  Provided, however, that the foregoing provisions of this

36

paragraph shall have no effect on the liability of any Exculpated Person that results from any such act or omission that is determined in a Final Order to have constituted fraud or other willful misconduct.

    8.3   <u>Terms Binding</u>.

    Upon the entry of the Confirmation Order, all provisions of this Plan, including all agreements, instruments, and other documents filed in connection with this Plan and executed by the Debtors or the Reorganized Debtors in connection with this Plan, shall be binding upon the Reorganized Debtors, the RDJV, the Plan Representative, the Guarantor, all Affiliates, all Claim and Equity Interest Holders, and all other Persons that are affected in any manner by this Plan and who receive notice hereof. All agreements, instruments, and other documents filed in connection with this Plan shall have full force and effect, and shall bind all parties thereto as of the entry of the Confirmation Order, whether or not such exhibits actually shall be executed by parties other than the Debtors or the Reorganized Debtors, or shall be issued, delivered, or recorded on the Effective Date or thereafter.

    8.6   <u>Continuation of Pre-Confirmation Injunction or Stays.</u>

    All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Bankruptcy Case pursuant to Sections 105, 362, and 525 of the Bankruptcy Code or otherwise that are in effect on the Confirmation Date or imposed by the Confirmation Order shall remain in full force and effect until the Final Decree.

    8.7   <u>Channeling Injunction Prohibiting Collection Action Against Guarantors and Affiliates and Prohibiting dissipation of assets by Guarantor During Plan Consummation.</u>

    Commencing as of the Effective Date and for so long as there is no uncured default under this Plan or until further order of the Bankruptcy Court, all Holders of Allowed Guaranteed Claims that are designated to be paid in full as provided for under this Plan, shall look solely to the provisions of this Plan for payment of their Allowed Guaranteed Claims, and are hereby restrained and enjoined from pursuing or continuing collection of any Allowed Guaranteed Claim against Guarantor or Affiliate. Until all Allowed Guaranteed Claims provided for under this Plan which have been guaranteed by Guarantor are paid in full, or until further order of the Bankruptcy Court, Guarantor is hereby restrained and enjoined from transferring any interest in real or personal property not in the ordinary course of business or for less than fair value in exchange, or otherwise through affirmative action impairing the post-judgment remedies of any Holder of an Allowed Guaranteed Claim. In furtherance of such injunction, following the Effective Date, no Holder of an Allowed Guaranteed Claim shall, with respect to Guarantor or Affiliate, make any demand, give any notice, commence or continue any civil action or garnishment, judicial or non-judicial foreclosure, levy, seizure, or sequestration of any real or personal property of Guarantor. Provided, however, that no provision of this Plan shall be construed to impair the right of the Holder of any Allowed Guaranteed Claim to transfer such claim, subject to the provisions of this Plan (including, in pertinent part, this Section 8.7), to the extent permitted by applicable law or contract.

Confirmation of this Plan shall be deemed to constitute the following findings of fact with respect to this Section 8.7:

8.7.1    The Reorganized Debtors and the Guarantor share an identity of interest, so that levy upon the separate assets of the Guarantor or the Affiliates would impair their ability to fund shortfalls under the Budget as required by Section 4.1 of this Plan, thereby jeopardizing consummation.

8.7.2    The Guarantor and the Affiliates have committed to contribute such assets as may be necessary to ensure consummation of this Plan.

8.7.3    The Guarantor holds indemnity rights against the Debtors such that collection of an Allowed Claim through levy upon Guarantor assets will not diminish claims which must be provided for under this Plan.

8.7.4    The Guarantor and the Affiliates, which hold the Allowed Claims in Class 20, have accepted this Plan and committed to fund shortfalls as necessary. To the extent holders of Allowed Guaranteed Claims have not accepted the Plan, the Plan is fair and equitable with respect to such Classes and does not unfairly discriminate against such Classes.

8.7.5    The Plan proposes to pay all Allowed Claims in full, and is feasible.

8.7.6    The Plan preserves the post-judgment remedies of Holders of Allowed Guaranteed Claims.

8.7.7    This Plan provision may be implemented under this Plan without the necessity of an adversary proceeding, and the Confirmation Order is sufficient to implement this provision under 11 U.S.C. § 1141.

## ARTICLE IX
## RETENTION OF JURISDICTION

9.1    Continuing Jurisdiction.

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Reorganized Debtors and the Bankruptcy Case is closed by Final Decree, the Bankruptcy Court shall have and retain the maximum jurisdiction as is legally permissible, including, without limitation, jurisdiction over the Assets (including the Property and the Causes of Action), the Reorganized Debtors, and the Estate for the following purposes:

(a)    Claims.  To determine the allowance, classification, validity, priority of any Claims against Debtor or any dispute with respect to Claims against the Debtors upon motion by the Reorganized Debtors or any other party in interest;

(b)    <u>Injunctions, etc.</u>  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person; to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court; to issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan and all matters referred to herein; and to determine all matters that may be pending before the Bankruptcy Court in the Bankruptcy Cases on or before the Effective Date with respect to any Entity;

(c)    <u>Professional Fees.</u>  To determine, before or after the Effective Date, any and all applications for allowance of compensation and expense reimbursement of Professionals for services rendered before the Effective Date, as provided for in the Plan;

(d)    <u>Certain Priority Claims.</u>  To determine any Priority Tax Claims, Non-Tax Priority Claims, or any request for payment of Administrative Claims;

(e)    <u>Dispute Resolution.</u>  To resolve any dispute arising under or related to the implementation, execution, consummation, or interpretation of the Plan and the making of distributions thereunder, including, without limitation, any dispute concerning payment of Professional fees and expenses of the Reorganized Debtors or any Committee;

(f)    <u>Leases and Executory Contracts.</u>  To determine the allowance and amount of any Cure Cost Claims or other disputes resulting from the assumption of Executory Contracts;

(g)    <u>Actions.</u>  To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted prior to the closing of the Bankruptcy Cases, including the determination of all controversies and disputes arising under and in connection with the Debtors' Property, the Causes of Action, the Assets, and any remands;

(h)    <u>Plan Modification.</u>  To modify the Plan under Section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(i)    <u>Aid Consummation.</u>  To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code;

(j)    <u>Implementation of Confirmation Order.</u>  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(k)    General Matters.  To determine all such other matters, and for such other purposes, as may be provided in the Confirmation Order, the Plan, or as otherwise may be authorized or not inconsistent with the provisions of the Bankruptcy Code;

(l)    Final Decree.   To enter an order and/or Final Decree closing the Bankruptcy Case.

# ARTICLE X
## MISCELLANEOUS PROVISIONS

10.1    Plan Modification.

10.1.1   Pre-Confirmation Modification.

The Plan may be altered, amended, or modified by the proponent before the Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

10.1.2   Post-confirmation Immaterial Modification.

The Debtors or the Reorganized Debtors may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, insofar as it does not materially and adversely affect the interest of holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan.

10.1.3   Post-confirmation Material Modification.

The Plan may be altered or amended after the Confirmation Date by the Reorganized Debtors in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims, provided that any alteration or amendment affecting any settlement agreement may be made only with the prior written consent of all parties to such settlement agreement and any other modification to the Plan is made after a hearing as provided in Section 1127 of the Bankruptcy Code. Subject to the foregoing provisions of this Section 10.1.3, notwithstanding the administrative closing of the Bankruptcy Cases, the Reorganized Debtors may propose amendments or modifications to this Plan at any time prior to or subsequent to Confirmation in accordance with the Bankruptcy Code and applicable Bankruptcy Rules.  If these cases have been closed, then such modification may be approved and shall be binding upon the holders of all claims provided under this Plan, without reopening the Bankruptcy Cases, as follows:

10.1.3.1     The Reorganized Debtors shall give written notice of the proposed modification to the remaining holders of all Claims provided for under this Plan that have not been paid in full at the time of such modification.  Such notice shall provide that the holders of such Claims may approve or reject the modification within forty-five (45) days from the date of

the mailing of such notice. The proponent of the modification shall mail a Ballot to each claimant with such notice.

10.1.3.2     Only Ballots which are completed and returned within the forty-five (45) day period shall be counted in determining whether Creditors have approved such modification. Such modification shall be deemed accepted and binding upon all remaining claimants in any Class which accept such modification by a total of fifty-one percent (51%) of the Claims voting on account of such modification, provided such voting claims constitute two-thirds (2/3) of the outstanding remaining Claims in such Class.

10.1.3.3     If such modification is so accepted, the modification shall be deemed contractually binding upon all members of the affected Class.

10.1.3.4     Only members of any Class of Claims affected by such modification shall be entitled to vote.

10.2     Exemption from Transfer Taxes.

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under this Plan may not be taxed under any law imposing a stamp tax or similar tax.

10.3     Events of Default.

The failure of the Reorganized Debtors to make any payment due under this Plan when due, and the failure of the Reorganized Debtors to cure such monetary default within twenty-one (21) days after written notice to the Reorganized Debtors of such default shall constitute a default under this Plan. Such written notices shall be given to the Reorganized Debtors in accordance with the notice provisions in Section 10.10 herein.

10.4     Remedies Upon Default.

Any "default," as defined in Section 10.3 hereof, shall entitle the holder of Allowed Claims affected thereby to the remedies provided under the Bankruptcy Code and under any promissory note issued pursuant to this Plan, or under any recorded deed to secure debt issued or continuing under the terms of this Plan. Any suit in law or in equity to enforce the rights and remedies under the Plan may be brought only in either the Bankruptcy Court or in any court of competent jurisdiction within the State of Georgia.

10.5     Final Decree.

Notwithstanding any other provision of this Plan, the Final Decree shall be entered upon substantial consummation of the Plan, notwithstanding that all payments under the Plan have not been made or are not yet due.

10.6     Effectuating Documents, Further Transactions, and Corporate Action.

41

The Debtors, the Reorganized Debtors, all holders of Allowed Claims receiving distributions under this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.  Prior to, on, or after the Effective Date (as appropriate), all matters provided for under this Plan that would otherwise require approval of the Equity Interest Holders or directors of the Debtors shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to the applicable general limited liability company or limited partnership law of Georgia without any requirement of further action by the Equity Interest Holders, the directors or the management of the Debtors.

10.7    Reservation of Rights.

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Confirmation Order shall continue to be in effect.  The filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Debtors or Reorganized Debtors, as the case may be, shall not be and shall not be deemed to be an admission or waiver of any rights of the Debtors or Reorganized Debtors with respect to the Holders of Claims or Equity Interests or otherwise.

10.8    Successors and Assigns.

The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, transferees and/or assigns of such Entities.

10.9    Governing Law.

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Georgia, except with respect to real property located outside the State of Georgia, in which case the rights of holders of Allowed Claims secured by such property shall continue to be governed by the laws of such other State.

10.10   Notices.

10.10.1    Unless a recipient of a notice required under this Plan has consented to receive such notice electronically, all notices, requests, or other communications required or permitted to be made in accordance with this Plan, including any change of address of any Person for the purpose of receiving distributions, shall be in writing and shall be delivered (a) personally, (b) by facsimile or email (confirmed by first class mail or express mail), or (c) mailed by first class mail.

10.10.2      Any such notice shall be deemed to have been given when received or, if mailed by first class mail, seven days after the date of mailing, postage prepaid, or, if express mailed, the next business day after the date of mailing, or if sent by facsimile or email, upon confirmation of receipt by the recipient; <u>provided</u>, <u>however</u>, that a proper notice of change of address will be effective for a distribution if received at least 30 days in advance of such distribution date.

10.10.3      Notices should be addressed as follows:

(a)      If to any of the Companies or Reorganized Debtors:

Cartel Properties, Inc.
(The Management Company)
340 E. Paces Ferry Road
Atlanta, GA 30305
Attn: Mr. George W. Rohrig

431 W. Ponce de Leon, LLC
340 E. Paces Ferry Road
Atlanta, GA 30305
Attn: Mr. George W. Rohrig

Cartel Properties Spalding Woods, LLC
340 E. Paces Ferry Road
Atlanta, GA 30305
Attn: Mr. George W. Rohrig

525 Moreland Avenue, LLC
340 E. Paces Ferry Road
Atlanta, GA 30305
Attn: Mr. George W. Rohrig

Cartel Properties II, LLC
340 E. Paces Ferry Road
Atlanta, GA 30305
Attn: Mr. George W. Rohrig

Rohrig Investments, LP
340 E. Paces Ferry Road
Atlanta, GA 30305
Attn: Mr. George W. Rohrig

Rohrig Pollack, LLC
340 E. Paces Ferry Road
Atlanta, GA 30305

Attn: Mr. George W. Rohrig

<u>With a copy to</u>:
Stone & Baxter, LLP
Fickling & Co. Building
Suite 800, 577 Mulberry Street
Macon, Georgia  31201
Facsimile No. (478) 750-9899
Attn:   Ward Stone
          David L. Bury

(b)      If to any holder of an Administrative Claim, a Priority Tax Claim or a Claim of any Class, at their last known address set forth on a proof of Claim or on the Schedules, if no proof of Claim has been filed.

(c)      If to any other Persons entitled to notice, at the respective addresses that such Persons entitled to notice have provided to the Reorganized Debtors.

10.10.4      Any party may change the address at which it is to receive notices under the Plan by furnishing written notice pursuant to the provisions of this Article X to the Entity to be charged with knowledge of such changes.

10.11   <u>Severability.</u>

If any provision of this Plan is determined to be unenforceable in whole or in part, either facially or as applied, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan or require the re-solicitation of any acceptance or rejection of the Plan, unless, in the absence of such provision, this Plan would fail of its essential purpose, as determined by the Bankruptcy Court.  Upon such a finding, the Debtors' period of exclusivity within which to file an amended plan shall be reinstated for a period of 60 days from the date such a finding becomes a Final Order, and the Debtors' period of exclusivity for solicitation of acceptances shall be enlarged for 105 days from the date such a finding becomes a Final Order.

IN WITNESS WHEREOF, the undersigned have caused this Plan to be duly executed as of the date written below, which execution may be in multiple identical counterparts.

Dated this the 19th day of August, 2013.

431 W. PONCE DE LEON, LLC
By:
/s/ George W. Rohrig
George W. Rohrig, Its Manager

CARTEL PROPERTIES SPALDING WOODS, LLC
By:

/s/ George W. Rohrig
_____
George W. Rohrig, Its Manager


525 MORELAND AVENUE, LLC
By:
/s/ George W. Rohrig
_____
George W. Rohrig, Its Manager


CARTEL PROPERTIES II, LLC
By:

/s/ George W. Rohrig
_____
George W. Rohrig, Its Manager


ROHRIG INVESTMENTS, LP
By:

/s/ George W. Rohrig
_____
George W. Rohrig, Its Manager


ROHRIG POLLACK, LLC
By:

/s/ George W. Rohrig
_____
George W. Rohrig, Its Manager



STONE & BAXTER, LLP

By:    /s/ Ward Stone, Jr.
       Ward Stone, Jr.
       Georgia Bar No. 684630
       David L. Bury
       Georgia Bar No. 133066
       Fickling & Co. Building
       Suite 800

577 Mulberry Street
Macon, Georgia 31201
(478) 750-9898;
(478) 750-9899 (*fax*)
Counsel for Debtors

**SCHEDULE 1**
**TO**
**JOINT PLAN OF REORGANIZATION OF DEBTORS**

**DEFINED TERMS**

As used in the Plan and in the accompanying Disclosure Statement, capitalized terms have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1    "Adequate Protection Payments" means those periodic payments made by the Debtors and received by the holder of the Claims of the Senior Secured Lenders, pursuant to the terms of the Cash Collateral Order.

1.2    "Administrative Claim" means Post-Petition Obligations evidencing a right to payment for costs and expenses of administration allowed under Sections 507(a) and 503(b) and otherwise under the Bankruptcy Code, including, but not limited to: (a) Fee Claims including reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code or otherwise arising under this Plan; (b) Plan expenses and the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtors; (c) Cure Costs; and (d) all fees and charges assessed against the Debtors' Estate under Chapter 123 of Title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.  Except as otherwise provided herein, Administrative Claims must be allowed by Order of the Bankruptcy Court.

1.3    "Administrative Claim Bar Date" shall have the meaning set forth in Section 3.1.1 of the Plan.

1.4    "Administrative Claim Objection Deadline" shall have the meaning set forth in Section 3.1.1 of the Plan.

1.5    "Ad Valorem Tax Escrow Account" means an escrow account which may be established by the Reorganized Debtors for payment of anticipated *ad valorem* taxes.

1.6    "Affiliate" shall have the meaning set forth in Section 101(2) of the Bankruptcy Code and shall include, without limitation, each of the following Persons or Entities:  (i) with respect to one another: 431 W. Ponce de Leon, LLC, Cartel Properties Spalding Woods, LLC, 525 Moreland Avenue, LLC, Cartel Properties II, LLC, Rohrig Investments, LP, and Rohrig Pollack, LLC; (ii) with respect to all of the Debtors: George W. Rohrig, Dana J. Rohrig, Matt Rohrig, Al Rohrig, Lindsey Rohrig, Grayson Rohrig, Cartel Properties, Inc, 660 Edgewood, LLC, 712 W. Ponce de Leon, LLC, 8th Street, LLC, GWR Management, LLC, Loudermilk/Rohrig, LLC, and Rohrig 6122 Roswell Road, LLC.

47

1.7    "<u>Allowed Claim</u>" means:

     (a)    a Claim that has been listed by any Debtor on its Schedules as other than disputed, contingent, or unliquidated, to the extent that it is not otherwise a Disputed Claim;

     (b)    a Claim for which a Proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, to the extent that it is not otherwise a Disputed Claim; or

     (c)    a Claim that is allowed: (i) in any Stipulation of Amount and Nature of Claim executed by the Debtors or the Reorganized Debtors, as applicable, and Creditor; (ii) in any contract, instrument, or other agreement entered into in connection with the Plan; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan.

1.8    "<u>Allowed . . . Claim</u>" means an Allowed Claim in the particular Class or category specified.

1.9    "<u>Allowed Guaranteed Claim</u>" means an Allowed Claim guaranteed by Guarantor under a Guaranty Agreement that is valid and enforceable under applicable law, whether or not such Allowed Claim was reduced to judgment prior to the Effective Date.

1.10    "<u>Allowed Priority Tax Claim</u>" means an Allowed Claim that is a Priority Tax Claim, except that such claim shall not include any interest or penalty accruing after the Petition Date, except as specifically provided for in the Plan.

1.11    "<u>Allowed Secured Claim</u>" means the amount of each Allowed Claim against the Debtors which is equal to either: (a) the amount stipulated as constituting the Allowed Secured Claim between the Debtors and the holder of such Claim, (b) the amount found to constitute such Allowed Secured Claim by the Bankruptcy Court, or, failing (a) and (b), (c) the lesser of (i) the total amount of indebtedness owed to the holder of such Claim; or (ii) the value of any property of the Estate or proceeds thereof with respect to which such creditor held a security interest or judgment lien properly perfected under the laws of the applicable jurisdiction on the Petition Date, and on the Effective Date to the extent provided under Section 506 of the Bankruptcy Code.

1.12    "<u>Allowed Unsecured Claim</u>" means an Allowed Claim that is an Unsecured Claim, including, but not limited to, Rejection Claims.

1.13    "<u>Allowed Subordinated Unsecured Claim</u>" means an Allowed Unsecured Claim that is subordinated by agreement or by order of the Court to any class of "Allowed Unsecured Claims."

1.14     "Applicable Release Price" with respect to the release of the lien of Allowed Secured Claims in Class 2, shall mean the Stipulated Value of each property collateralizing an Allowed Secured Claim in Class 2 times the greater of: (i) a percentage, the numerator of which shall be the principal balance remaining outstanding under the New Secured Note directly collateralized by the applicable property, and the denominator of which shall be the amount of the Allowed Secured Claim in the applicable sub-class of Class 2 on the Effective Date; or (ii) a percentage, the numerator of which shall be the principal balance remaining outstanding under all New Secured Notes issued with respect to Allowed Secured Claims in Class 2, and the denominator of which shall be the amount of the total of Allowed Secured Claims in Class 2 on the Effective Date.

1.15     "Asset(s)" mean all Property of the Debtors and the Estate and all Causes of Action of the Debtors and the Estate, all of which shall be deemed to be retained and preserved for enforcement and under the custody and control of the Estate and the Debtors, as applicable, through the Reorganized Debtors, as the authorized representative of the Debtors and the Estate, and administered by the Reorganized Debtors as of the Effective Date, as further set forth herein.

1.16     "Ballot" means a ballot filed in the Bankruptcy Case within the time set by the Court for filing such Ballots, accepting or rejecting this Plan.

1.17     "Balloting Report" means a report of all valid ballots filed by Debtors prior to the Confirmation of this Plan, as required by the Bankruptcy Rules.

1.18     "Bankruptcy Case" or "Bankruptcy Cases" means that certain case or those certain cases filed by the Debtors under Chapter 11 of the Bankruptcy Code captioned *431 W. Ponce de Leon, LLC, Cartel Properties Spalding Woods, LLC, 525 Moreland Avenue, LLC, Cartel Properties II, LLC, Rohrig Investments, LP, and Rohrig Pollack, LLC,  Jointly Administered under Case No. 13-53483-BEM.*

1.19     "Bankruptcy Causes of Action" means all causes of action available to each or all of the Debtors as  Debtors-in-possession in the Bankruptcy Cases, including, but not limited to, all other Claims, actions, avoiding powers, rights of recovery, subordination rights or other actions against Insiders and/or any other Persons or Entities under the Bankruptcy Code, including Sections 505, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or any other applicable fraudulent conveyance, fraudulent transfer, or preference or otherwise under the Bankruptcy Code or otherwise arising in law, equity, or admiralty and maintainable by any or all of the Debtors-in-possession and the Reorganized Debtors for the recovery of money or property, seeking modification, disallowance, re-characterization, or equitable subordination of Claims, or other relief.

1.20     "Bankruptcy Code" or "Code" means Title 11 of the United States Code.

1.21     "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

1.22    "Bankruptcy Rules" or "Rules" mean, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect with respect to the Bankruptcy Cases.

1.23    "Bar Date" means the applicable bar date by which a Proof of Claim, proof of Interest, Ballot or Notice must be or must have been Filed, as established by an order of the Bankruptcy Court, Bankruptcy Code, or Bankruptcy Rules, including the Bar Date Order and the Confirmation Order.

1.24    "Bar Date Order" means, as applicable, the Confirmation Order or the Order Establishing Bar Dates for Filing Proofs of Claims, proofs of Interests, Ballots, or Notices, entered by the Bankruptcy Court, as the same may have been or may be amended, modified, or supplemented.

1.25    "Business Day" means any day, other than Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.26    "Budget" means that budget attached to the Disclosure Statement filed in connection with this Plan, or as amended from time to time by the Reorganized Debtors following the Effective Date.

1.27    "Cash" means cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America and certificates of deposit issued by federally-insured banks.

1.28    "Cash Collateral Order" means the Consent Order on Use of Cash Collateral first entered in the Bankruptcy Case on May 9, 2013, as extended and amended (Dockets No. 31, 126, and 240 in Case No. 13-53483-BEM), and as may be extended or otherwise amended in the future.

1.29    "Causes of Action" includes Bankruptcy Causes of Action and all other Claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims, or any other claims whatsoever of the Debtors, the holders of interests in the Debtors (but only with respect to Causes of Action of such interest-holders against the Debtors on account of or arising out of ownership of such interests) and/or the Estate that are or may be pending on the Effective Date or instituted by the Debtors or the Reorganized Debtors, either before or after the Effective Date against any Person or Entity, including, without limitation, any Affiliate or Insider, whether under the Bankruptcy Code, or otherwise, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown, suspected or unsuspected, whenever arising, whether prior to, on, or after the Effective Date, and of any character or kind whatsoever, whether based in contract, in tort, or otherwise, at law or in equity or under any other theory of law, including, but not limited to, (a) those actions generally or specifically retained or discussed in the Disclosure Statement or Plan; (b) Bankruptcy Causes of Action; (c) Commercial Tort

Claims; (d) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (e) the right to object to Claims or interests; (f) claims pursuant to section 362 of the Bankruptcy Code; (g) such claims and defenses as fraud, mistake, duress, usury; and (h) any other theory, without limitation and all other claims arising out of or related to any of the foregoing or discovered during or as a consequence of the pursuit of any of the foregoing. As used in the Plan, Causes of Action is intended to have the broadest possible meaning to ensure the ability of the Debtors or the Reorganized Debtors to pursue any available action supported in fact, in law, in equity, in admiralty, or otherwise, and none of the specific examples provided herein shall be construed as limiting the scope or meaning of such term.

1.30    "Claim" means "the term claim," as defined in Section 101(5) of the Bankruptcy Code, against the Debtors or in favor of the Debtors or the Estates against third parties.

1.31    "Claims Objection Bar Date" means the latest of: (a) 90 days after the Effective Date; (b) 120 days after the Filing of a Proof of Claim for such Claim; (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order for objecting to the applicable Claim; and (d) such later date as provided for by order of the Bankruptcy Court, which order may be entered without further notice.

1.32    "Class" means a class of Claims or Interests, as described in Article II of this Plan.

1.33    "Collateral" means any property of the Debtors that is subject to a valid and enforceable lien to secure a Claim.

1.34    "Commercial Tort Claims" means any tort claim of the Debtors arising in connection with the Debtors' operations, formation, acquisition of its assets, or otherwise including, but not limited to, claims for professional malpractice, director or officer Liability, trespass to real or personal property, negligent construction, interference with existing or prospective contractual rights or relationships, or violations of the bankruptcy automatic stay.

1.35    "Companies" mean the Debtors.

1.36    "Confirmation" means the entry of the Confirmation Order on the docket of the Bankruptcy Court within the meaning of Bankruptcy Rules 5003 and 9021.

1.37    "Confirmation Date" means the date of Confirmation.

1.38    "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, as such hearing may be continued from time to time.

1.39    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, entry of which shall constitute the approval of the RDJV of the Debtors as of the Effective Date, as further set forth herein.

1.40    "Convenience Class Claim" means an Unsecured Claim against the Debtors, however arising, that is allowed in, or voluntarily reduced to, the amount of $3,000 or less.

1.41    "Creditor" means any Person that is the holder of a Claim against any of the Debtors.

1.42    "Cure Costs" means such amount due to the holder of an Executory Contract in order to assume an Executory Contract in accordance with section 365 of the Bankruptcy Code, as may be (i) found by the Bankruptcy Court, or (ii) agreed to by the Reorganized Debtors and the holder of such Executory Contract.

1.43    "Debtors" mean 431 W. Ponce de Leon, LLC, Cartel Properties Spalding Woods, LLC, 525 Moreland Avenue, LLC, Cartel Properties II, LLC, Rohrig Investments, LP, and Rohrig Pollack, LLC, collectively, Debtors and Debtors-in-Possession under the Bankruptcy Cases and as Debtors and Debtors-in-possession under the Bankruptcy Code.  Any single of the Debtors may be referred to as a "Debtor."

1.44    "Disclosure Statement" means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to the Plan, incorporating the terms of this Plan, including the defined terms provided herein, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code, as the same may be amended, modified, or supplemented.  The terms of the Disclosure Statement are incorporated herein and made a part of this Plan by this reference thereto.  ***In the event of any conflict of terms between the Disclosure Statement and this Plan, the term or terms of this Plan shall govern.***

1.45    "Disposition" means any sale, conveyance, transfer, assignment, liquidation, or abandonment of any Assets by the Reorganized Debtors.

1.46    "Disputed Claim" means:

(a)    if no Proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim that is listed on the Debtors' Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtors, the Reorganized Debtors, or any other party in interest has Filed an objection by the Claims Objection Bar Date, or (ii) a Claim that is listed on the Debtors' Schedules as disputed, contingent, or unliquidated; or

(b)    if a Proof of Claim or request for payment of an Administrative Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law, a Claim for which an objection has been Filed by the Debtors, the Reorganized Debtors or any other party in interest, as the case may be, by the Claims Objection Bar Date, if such objection has not been withdrawn or denied by a Final Order.

1.47    "Disputed Claims Reserve" means the interest-bearing account to be established and maintained by the Reorganized Debtors to reserve for all Disputed Claims, as further provided in the Plan.

1.48    "Effective Date" means the last day of the calendar month which follows the calendar month in which the Confirmation Date occurs and on which no stay of the Confirmation Order is in effect; provided, however, that, without complying with Section 10.1.3 of the Plan, following Confirmation the Debtors may move the Bankruptcy Court pursuant to Bankruptcy Rule 9006(b), to extend the Effective Date for a period of no more than ninety (90) days.

1.49    "Entity" shall have the meaning set forth in Section 101 of the Bankruptcy Code.

1.50    "Equity Interest" means the rights of the holders of any equity security of the Debtors and the rights of any Entity to purchase or demand the issuance of any equity security of the Debtors, including: (a) redemption, conversion, exchange, voting, participation, and dividend rights; (b) liquidation preferences; and (c) stock options and warrants.

1.51    "Equity Interest Holder" means the holder of an Equity Interest.

1.52    "Estate" or "Estates" means the Estates created for the Debtors in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.53    "Estimated Claim" means any Claim, the amount of which has been estimated by the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code.  Except as provided in Section 6.7 of this Plan with respect to the estimation of un-liquidated or contingent claims, an Estimated Claim shall not be deemed an Allowed Claim and no distribution shall be made on account of an Estimated Claim under this Plan until the Bankruptcy Court has determined the actual amount of the Claim.  Until such time, all Estimated Claims shall be treated as Disputed Claims under this Plan.

1.54    "Exculpated Persons" shall have the meaning set forth in Section 8.2 of the Plan.

1.55    "Executory Contract" means a contract between or among any Debtors and a third party under which all parties owed continuing obligations of performance on the  Petition Date as defined under case law interpreting Section 365 of the Bankruptcy Code, notwithstanding O.C.G.A. § 13-1-2.  Executory Contracts shall include, without limitation, Tenant Leases and any other unexpired leases.

1.56    "Fee Claim" means a Claim under Sections 330(a), 331, 503, or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Bankruptcy Case from the Petition Date through the Effective Date.

1.57    "Fee Objection Deadline" shall have the meaning set forth in Section 3.1.1 of the Plan.

1.58    "File," "Filed," or "Filing" means file, filed, or filing with the Bankruptcy Court in the Bankruptcy Case.

1.59    "Final Decree" means a final decree as described in Bankruptcy Rule 3022.

1.60    "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired.

1.61    "GAAP" means United States generally accepted accounting principles, consistently applied, as in effect on the Effective Date of this Plan.

1.62    "Governmental Entity" means any federal, state or local or foreign government, any political subdivision thereof or any court, administrative or regulatory agency, department, instrumentality, body or commission or other governmental authority or agency, domestic or foreign.

1.63    "Guarantor" means George W. Rohrig.

1.64    "Guaranty Agreement" means any written contract of guaranty, surety, indemnity, contribution, or exoneration with respect to any obligation of the Debtors giving rise to a Claim against the Debtors, and includes, without limitation, any Guaranty Agreement with respect to the Claims of Secured Lenders.

1.65    "Income Tax Distribution" means the distribution from the Reorganized Debtors to the Equity Interest Holders to meet annual income tax obligations, which shall be made annually in an amount equal to the lesser of the income tax liability due on account of income reported on the Schedule K-1's issued by the Reorganized Debtors, and (ii) the Equity Interest Holders' actual liability for federal, state and local income taxed for the subject calendar year

1.66    "IRC" means the United States Internal Revenue Code of 1986, as amended.

1.67    "IRS" means the Internal Revenue Services agency of the United States.

1.68    "Insider" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code, and includes George W. Rohrig and any Affiliate.

1.69    "Insider and Affiliate Claims" means the Claims held by Rohrig or another Affiliate, whether existing on the Petition Date or acquired thereafter.

1.70    "Insurance Claim" means any claim of the Debtors under any Insurance Contract covering the Debtors or any interest of the Debtors in property, arising prior to or following the Effective Date of this Plan, including claims of the Debtors against third parties to the extent covered by Debtors' insurance.

1.71    "Insurance Contract" means any contract of insurance to which the Debtors was a party on the Petition Date or on any date thereafter until the Effective Date of this Plan, or thereafter for the term of the Insurance Contract.

1.72    "Litigation Costs" means the good faith estimate of the Reorganized Debtors of all actual and necessary costs and expenses to be incurred after the Effective Date in connection with investigating, prosecuting, settling, or otherwise pursuing the Causes of Action and the actual costs of the Litigation.

1.73    "Mechanic's Lien Claims" means any Allowed Secured Claims secured by Resulting Liens arising out of validly perfected materialmen's liens against Assets of the Debtors.

1.74    "Moreland Assemblage" means (and consists of) the following seven tracts located in Fulton County, Atlanta, Georgia: (1) 515 Moreland Ave. (Parcel No. 14 00120011 032 owned by Debtor 525 Moreland, (2) 525 Moreland Ave. (Parcel No. 14 00120011 033 owned by Debtor 525 Moreland), (3) 1131 Glenwood Ave. (Parcel No. 14 00120011 030 owned by Debtor Cartel Properties II), (4) 531 Moreland Ave. (Parcel No. 14 00120011 034 owned by Debtor Cartel Properties II), (5) 537 Moreland Ave. (Parcel No. 14 00120011 035 owned by Debtor Cartel Properties II), (6) 1152 Portland Ave. (Parcel No. 14 00120011 036 owned by Debtor Cartel Properties II), and (7) 1146 Portland Ave. (Parcel No. 14 00120011 037 owned by Debtor Rohrig Investments).

1.75    "Non-Tax Priority Claims" means any Claim that is entitled to priority in payment pursuant to Section 507(a)(3), (4), (5) or (6) of the Bankruptcy Code and that is not a Priority Tax Claim, Administrative Claim, or a Secured Claim.

1.76    "O.C.G.A." means the Official Code of Georgia Annotated, as amended.

1.77    "Person" means a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

1.78    "Petition Date" means February 19, 2013.

1.79    "Plan" means this joint plan of reorganization for the Debtors and all exhibits and schedules attached hereto or referenced herein, which exhibits shall be part of the Plan as if set forth fully herein, as any of the same may be amended, modified, or supplemented.

1.80    "Plan Interest" means simple interest at the rate of 5.25%, or such other rate as the Bankruptcy Court may determine at the Confirmation Hearing is appropriate, such interest to

accrue from the Effective Date with respect to those Allowed Claims specifically entitled to such interest under this Plan.

    1.81   "<u>Plan Representative</u>" means the Management Company, following the Effective Date.

    1.82   "<u>Post-petition Obligations</u>" means, with respect to accounts payable or other obligations of any or all of the Debtors, such accounts or obligations which have arisen in the ordinary course of business of the Debtors, or are otherwise granted Administrative Expense status under the Plan, after the date of the filing of the Bankruptcy Case and before confirmation of this Plan, exclusive of interest accruals on account of Pre-petition Obligations of the Debtors.

    1.83   "<u>Pre-petition</u>" means prior to February 19, 2013, the date of the filing of the voluntary petitions under Chapter 11 by the Companies.

    1.84   "<u>Pre-petition Obligations</u>" means all obligations of the Debtors arising Pre-petition.

    1.85   "<u>Priority Tax Claim</u>" means a Claim that is entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

    1.86   "<u>Profit Participation</u>" means 80% of the Gross Profits of the Reorganized Debtor Joint Venture generated from the operations of the Reorganized Debtor Joint Venture following the Effective Date, calculated as of the end of each calendar year during the Plan.

    1.87   "<u>Pro Rata</u>" means, when used with reference to a distribution to holders of Allowed Claims, the division of the gross amounts to be paid will be divided and paid proportionately, so that with respect to a particular Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Claim to (ii) the Allowed Amount of such Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (ii) the amount of all Allowed Claims in that Class.  In determining such ratio, the Reorganized Debtors shall not include interest otherwise accruing upon such Claim after the Effective Date, may round percentages to the nearest $1/100^{th}$ (.01) and may round each resulting claim to the nearest one dollar ($1.00).

    1.88   "<u>Professional</u>" means any professional employed in the Bankruptcy Cases pursuant to Sections 327 or 1103 of the Bankruptcy Code or any professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to Section 503(b)(4) of the Bankruptcy Code.

    1.89   "<u>Proof of Claim</u>" means a writing complying in all respects with Bankruptcy Rule 3001, and filed in compliance with Bankruptcy Rule 3003, within the time provided by any Bar Date Order entered in the Bankruptcy Cases, or any other Order specifically applicable to such writing.

1.90    "<u>Rejection Claim</u>" means a claim arising out of the rejection of an Executory Contract, allowed under Section 502 of the Bankruptcy Code, and filed by the Rejection Claim Deadline.

1.91    "<u>Rejection Claim Deadline</u>" means the deadline set under the Plan for filing Administrative and Rejection Claims.

1.92    "<u>Reorganized Debtor Joint Venture</u>" mean the Reorganized Debtors following the Effective Date of this Plan.  "<u>Reorganized Debtor</u>" means any single of the Debtors following the Effective Date of this Plan.

1.93    "<u>Residential Plan Interest</u>" means simple interest at the rate of 4.32%, or such other rate as the Bankruptcy Court may determine at the Confirmation Hearing is appropriate, such interest to accrue from the Effective Date with respect to those Allowed Claims specifically entitled to such interest under this Plan.

1.94    "<u>Schedules</u>" mean the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors, as required by Section 521 of the Bankruptcy Code and the official bankruptcy forms, as the same may have been or may hereafter be amended, modified, or supplemented by the Debtors or the Reorganized Debtors, as the case may be.

1.95    "<u>Secured Claim</u>" means a Claim that is secured by a lien on Assets in which a Debtor's Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such Property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a), and if applicable, Section 1129(b) of the Bankruptcy Code.

1.96    "<u>Set-off Claims</u>" means all Allowed Secured Claims secured solely by rights of set-off against accounts receivable due the Debtors on the Petition Date, to the extent allowed under Section 553 of the Bankruptcy Code.

1.97    "<u>Special Notice Parties</u>" means the United States Trustee, the parties on the Reorganized Debtors' shortened mailing matrix to be established post-Confirmation and approved by the Bankruptcy Court, and any other parties that have requested in writing a relevant special notice from the Reorganized Debtors.

1.98    "<u>Statutory Attorneys' Fees</u>" shall mean the portion of any Claim constituting Pre-petition attorneys' fees charged against the Debtors under O.C.G.A. § 13-1-11.

1.99    "<u>Stipulation of Amount and Nature of Claim</u>" means a stipulation or other agreement between the Debtors or the Reorganized Debtors and a Creditor, or an agreed order of the Bankruptcy Court, establishing the amount and nature of a Claim.

1.100   "<u>Stipulated Value</u>" with respect to property of the Estate collateralizing an Allowed Secured Claim shall be the values listed in the Plan with respect to such Claim.

1.101  "<u>Subsequently Allowed Claims</u>" means any Claim which becomes an Allowed Claim after the Effective Date.

1.102  "<u>Tenant Lease Claims</u>" mean the Claims of tenants which arise under or are related to a Tenant Lease, including, without limitation, the Tenant Recoupment Claims and Claims for reimbursement of common area maintenances charges.

1.103  "<u>Tenant Leases</u>" mean the leases in effect between any of the Debtors and tenants in the properties on the Effective Date, with the tenant remaining in possession of the leased premises on such date.

1.104  "<u>Uniform Commercial Code</u>" means the Uniform Commercial Code suggested by the Commission of Uniform State Laws, as enacted and in force in the State of Georgia on the Effective Date.

1.105  "<u>Unsecured Claim</u>" means any Claim that is not an Administrative Claim, Non-Tax Priority Claim, Priority Tax Claim, Secured Claim, or subordinated Claim.

1.106  "<u>Voting Deadline</u>" means the deadline set by the Court for receipt of Ballots respecting this Plan.

[END OF DEFINED TERMS]

G:\CLIENTS\Rohrig v. Chapter 11\Plan\Rohrig Joint Plan (for upload) (08.19.13) (final).doc